**Jane Marie THOMPSON,**
**Petitioner, Appellant,**

v.

**Bruce Allen NEWMAN, Respondent.**

No. CX–85–1501.

Court of Appeals of Minnesota.

March 18, 1986.

David J. Twa, Blue Earth Co. Atty., Paul T. Ostrow, Asst. Co. Atty., Mankato, for appellant.

Garry D. Barnett, Regan & Barnett, Mankato, for respondent.

Heard, considered and decided by HUS-PENI, P.J., and FOLEY and NIEREN-GARTEN, JJ.

## OPINION

HUSPENI, Judge.

Appellant Jane Thompson appeals from a trial court order that increased child support payable by respondent Bruce Newman to an amount less than that specified in the child support payment guidelines. On appeal, Thompson argues: (1) that a downward deviation from the guidelines was not justified; (2) that the trial court erred by not considering Minn.Stat. § 518.17 subd. 4(c) (1984) when setting the child support level; (3) that the trial court erred by not including Newman's rental income as a part of Newman's income; (4) that health insurance is an obligation separate from child support; and (5) that the trial court erred by not including the notice language of Minn.Stat. § 257.66, subd. 5 (1984) in the support order. We reverse and remand.

## FACTS

On May 6, 1975, Bruce Newman was adjudged to be the father of Jane Thompson's daughter. Newman was ordered to pay the lying-in costs and $30.00 per month child support. At the time of the original support order, both Newman and Thompson were unemployed. Since that time the income levels of both parties have increased.

Newman's net monthly income at the time of the support modification hearing was $1,181.02 per month. Newman's wife's income was approximately $1,000 per month. Newman and his wife also received $285 per month in rental income for renting a portion of their home. The trial court found that due to pending special assessments on his property, Newman's expenses would be increasing.

Thompson's affidavit showed she received income from Social Security of $904 per month and in 1984 the net profit from her glass blowing business was $5,120. Thompson testified that the income from this business is not predictable.

The trial court made no findings about either party's expenses except for Newman's pending property assessment. There were no findings about the child's needs or resources. The trial court did indicate:

> That considering the increased needs of the child, the increased income of [Newman], and the increased income of [Thompson], as well as the fact that this is a paternity case rather than a dissolution case, the Court concludes that the guidelines of [Minn.Stat. §] 518.551 should be departed from.

Based on this finding the trial court modified Newman's child support obligation by increasing his payments to $190 per month and making him responsible for the child's health insurance which was $41.92 per month under his employer's health plan.

## ISSUES

1. Did the trial court abuse its discretion by departing downward from the child support guidelines?

2. Did the trial court err by not including Newman's rental income as part of his income when determining the amount of support payable under the guidelines?

3. Should medical insurance premiums be considered a part of the child support payment when determining the total amount of the child support obligation?

4. Should the notice language of Minn. Stat. § 257.66, subd. 5 be included in an amended support order?

## ANALYSIS

### I.

Trial courts have broad discretion in determining child support matters. *DuBois v. DuBois*, 335 N.W.2d 503, 507 (Minn. 1983). If the determination has a reasonable and acceptable basis in fact and principle the trial court will be affirmed. *Id.* This broad discretion is limited, however, by Minn.Stat. § 518.17, subd. 5 (1984). Under this section, a trial court cannot set an obligor's child support obligation at an amount less than that required under the child support guidelines in Minn.Stat. § 518.551, subd. 5 (1984) unless the trial court makes express findings of fact to support its departure. *Kowalzek v. Kowalzek*, 360 N.W.2d 423, 425 (Minn.Ct.App. 1985).

The trial court here gave two reasons for departing from the guidelines: The custodial parent's income had increased and the "fact that this is a paternity case rather than a dissolution case." Thompson argues that the fact that this is a paternity matter is not a proper factor to consider and that her increased income alone is not a sufficient basis for a downward departure. We agree.

We do not know exactly what the trial court intended when it found that "this is a paternity case rather than a dissolution case." Newman argues that this finding only indicates that the trial court did not consider Minn.Stat. § 518.17, subd. 4(c) (1984).

Section 518.17, subd. 5 provides that a trial court may order support below the amount determined under the guidelines only after considering the factors in section 518.17, subd. 4. Those factors are:

> (a) The financial resources and needs of the child;
>
> (b) The financial resources and needs of the custodial parent;

(c) The standard of living the child would have enjoyed had the marriage not been dissolved;

(d) The physical and emotional condition of the child, and his educational needs; and

(e) The financial resources and needs of the noncustodial parent.

Minn.Stat. § 518.17, subd. 4 (1984).

The intent of section 518.17, subd. 4(c) is that a child is entitled to enjoy the benefits of the incomes of both parents. *See Blomgren v. Blomgren,* 367 N.W.2d 918, 921 (Minn.Ct.App.1985). That intent cannot be altered by the fact that the child's parents have not been married. Section 518.17, subd. 4(c) may not be interpreted in such a manner as to permit an award of child support for a child born out of wedlock to be less than an award for a child born of a marriage. To do so would violate the equal protection clauses of both the United States and the Minnesota Constitutions. In *Gomez v. Perez,* 409 U.S. 535, 538, 93 S.Ct. 872, 875, 35 L.Ed.2d 56 (1973), the Court held that:

a State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally.

■ To apply section 518.17, subd. 4(c) to provide only legitimate children with the benefits of both parents' incomes would be in direct violation of this holding. Therefore, whether the support order arises from a judgment of paternity or a dissolution, section 518.17, subd. 4(c) must be considered to determine what standard of living the child would have enjoyed if she or he had the benefit of both parents' incomes.

The trial court also cited Thompson's increased income as a basis for its downward departure. A custodial parent's income alone is not a sufficient basis for a downward departure from the guidelines. *Bjorke v. Bjorke,* 354 N.W.2d 107, 110 (Minn.Ct.App.1984).

■ We conclude that the trial court considered inappropriate factors to support its downward departure from the child support guidelines. Upon remand the trial court shall either enter a support order in the guidelines amount or support a downward departure with considerations that are appropriate under Minn.Stat. § 518.17, subd. 4.

## II.

Thompson also argues that $140 of the $285 per month that Newman receives for renting a part of his home should be considered income when applying the child support payment guidelines.

■ Minn.Stat. § 518.551, subd. 5(a)(1) (1984), provides that the child support payment guidelines take into consideration, inter alia, "all earnings, income, and resources of the obligor including real and personal property." Minn.Stat. § 518.54, subd. 6 (1984), defines income as "any form of periodic payment to an individual." Newman's rental income comes within this definition of income. The rent payments are income from real property. Also the payments are a periodic reliable source of income. *Cf. Stangel v. Stangel,* 366 N.W.2d 747 (Minn.Ct.App.1985) (loans appellant received from friends, that were to be repaid, were not periodic and were not payments and therefore should not be considered part of appellant's income.)

■ Further, the trial court specifically noted in its findings that Newman's expenses on this property would be increasing. To consider the expenses of maintaining property and not the income from that property when determining the income available for child support would be unjust.

Newman cites *Kreidler v. Kreidler,* 348 N.W.2d 780 (Minn.Ct.App.1984), as authority for excluding rental income when computing income for purposes of applying the child support guidelines. The appellant in *Kreidler,* however, did not specifically raise the issue of rental income and therefore that case is not dispositive of this issue.

### III.

Both Newman and Thompson speculate that the trial court included the $41.92 medical insurance premium as part of Newman's child support obligation. The trial court does not specifically state that the insurance premium is part of the child support obligation.

 We note that Minn.Stat. § 518.551, subd. 5(6) allows a deduction from net income for any payments made for a child's medical insurance. The statute does not provide alternative methods for deducting this amount such as including it as part of the child support obligations.[1] Therefore, the medical insurance premium must be considered an obligation separate from the child support obligation provided for in the child support guidelines. The trial court should have deducted the $41.92 from Newman's gross income in arriving at the net income figure to which the support guidelines would apply.

### IV.

Finally, Thompson argues that the trial court erred when it did not include the notice required under Minn.Stat. § 257.66, subd. 5. We agree. That provision, enacted after the original support order was entered, reads as follows:

> Any order for support or maintenance issued under this section shall provide for a conspicuous notice that, if the obligor fails to make the support payments, the obligee or a public agency responsible for support enforcement may obtain docketing of a judgment for the unpaid amounts under the provisions of section 548.091. The notice shall enumerate the conditions that must be met before the judgment can be docketed.

Minn.Stat. § 257.66, subd. 5 (1984). On remand the trial court shall assure that the notice required by section 257.66, subd. 5 is incorporated into the support order.

### DECISION

The trial court relied upon impermissible factors to justify its downward departure from the child support guidelines.

Respondent's rental income should have been considered income when determining the total amount available for his child support obligation.

The cost of medical insurance premiums cannot be considered as part of the child support obligation amount determined under the child support guidelines, but the cost must be deducted from the gross income of respondent.

The notice provided for in Minn.Stat. § 257.66, subd. 5 must be included in an amended support order.

Reversed and remanded for further proceedings consistent with this opinion.

---

1. We are aware of language in *Scott v. Scott*, 352 N.W.2d 62 (Minn.Ct.App.1984) and *Coady v. Jurek*, 366 N.W.2d 715 (Minn.Ct.App.1985) that refers to allowing a direct deduction of medical insurance premiums from the child support obligation set by the child support guidelines. This issue was not necessary to the decision in either *Scott* or *Coady.* Also, the court in those decisions was not directed to Minn.Stat. § 518.551, subd. 5(6) and neither opinion refers to this section. By our holding in this case we recognize that the issue of deductibility of medical insurance premiums is controlled by Minn.Stat. § 518.551, subd. 5(6).