STATE of Minnesota, et al.,
Respondents,

Andrea Zabloski, Appellant
(C2–87–1125) Respondent
(C6–87–1144)

v.

Daryl HALL, Respondent,

Darren Wayne Alexander Zabloski, by
and through his guardian ad litem, Steven P. Coz, intervenor, Respondent
(C2–87–1125) Appellant (C6–87–1144).

Nos. C2–87–1125, C6–87–1144.

Court of Appeals of Minnesota.

Jan. 19, 1988.

Alan Mitchell, St. Louis Co. Atty., T. Frank Norton, Asst. Co. Atty., Duluth, for respondents.

Douglas P. Merritt, Daniel C. Berglund, Duluth, for appellant (C2–87–1125), respondent (C6–87–1144).

David P. Sullivan, Duluth, William E. Haugh, Jr., St. Paul, Peter Parcher, Steven Hayes, New York City, N.Y., for respondent.

Steven P. Coz, Duluth, for intervenor.

Heard, considered and decided by
FORSBERG, P.J., and CRIPPEN and
KALITOWSKI, JJ.

## OPINION

CRIPPEN, Judge.

Appellant Andrea Zabloski and public authorities commenced this parentage action against respondent Daryl Hall in April 1984. Prior to trial, Hall acknowledged paternity. The only remaining issues involved setting the amount of child support and awarding attorney fees to Zabloski and the child's appointed guardian ad litem. This appeal is from the judgment and subsequent post-trial order denying new trial motions of Zabloski and the guardian.

### FACTS

Zabloski and Hall have never been married to each other, nor have they ever resided together. Their relationship consisted of a single sexual encounter early in 1983. Their son was born on January 8, 1984.

Zabloski is currently 24 years old and lives in Duluth. She also has a minor daughter who was born in June 1985. She and her two children live in a small one-bedroom apartment.

Zabloski was on public assistance from October 1983 until October 1986, when she began receiving temporary child support from Hall. Her monthly income during that time consisted of approximately $437 in A.F.D.C. benefits and an average of $120 in food stamps. Since the birth of her daughter, she has also received $95 per month in child support, an amount which

she expects will soon increase to $250 per month.

At trial, Zabloski presented evidence of the needs of her household. She submitted a proposed monthly budget of $3143, based on the purchase of an $80,000 three-bedroom home, a new car, monthly food expenditures of $400, and monthly spending of $800 for her son (including $175 for clothing, $200 for toys/books, $125 for school needs, $53 for musical training/supplies, and $300 monthly toward the purchase of a $9000 piano).

Experts retained by both parties testified that the amount of money a parent spends on a child is largely a matter of personal choice. Zabloski's expert testified that on a net monthly income of $43,000, approximately 13 percent or $5,590 per month would be spent on a 3–year–old child, with an increase to 25 percent at age 6. An economist testifying on Hall's behalf concluded that at an annual income of $29,338, approximately 25 percent or $611 per month would be needed to support one child in a family of three or four. Utilizing other statistics, that amount decreased to $427 per month.

Hall is 40 years old and resides in Millbrook, New York in a three-bedroom home located on 160 acres of land. He is unmarried and has no other children. He is an entertainer who has achieved commercial success, and his current net income approximates $1.4 million per year, or $116,000 per month. He testified by deposition that most of his personal monthly expenses of $8250 are for travel and business related needs. Hall further described his personal lifestyle as "frugal" and "simple." He indicated that he would want his son Darren to live in a similar manner and to grow up as he did, without expensive music lessons or tutoring.

The trial court granted custody of the child to his mother. Hall was ordered to pay child support of $1000 per month, to provide health and dental coverage for Darren, and to pay for any uninsured medical or dental expenses. Absent an upward deviation, no higher award is provided under statutory child support guidelines. Minn.

Stat. § 518.551, subd. 5(a) (1986). Hall was also directed to reimburse St. Louis County $20,763.93 for A.F.D.C. payments and medical expenditures. The court awarded Zabloski and the guardian all attorney fees and costs incurred through the time of trial, an amount totalling $62,241.63. Post trial, $11,563 in back support was awarded directly to Zabloski and additional attorney fees of $500 were awarded to both Zabloski and the guardian. On appeal, Zabloski and the guardian contend the ongoing child support award is unsatisfactory.

## ISSUE

Did the trial court abuse its discretion in declining to deviate from the child support guidelines?

## ANALYSIS

Trial courts are accorded broad discretion in setting child support, and an appellate court will find an abuse of that discretion only where it finds a "clearly erroneous conclusion that is against logic and the facts on the record." *Moylan v. Moylan*, 384 N.W.2d 859, 864 (Minn.1986) (quoting *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984)).

The statutory child support guidelines are a starting point for the determination of a support award. *Moylan*, 384 N.W.2d at 863. Where an obligor's net monthly income is $4000 or above, the guidelines set child support for one child at $1000. Minn. Stat. § 518.551, subd. 5(a) (1986). The statute further provides:

(a)

    \*     \*     \*     \*     \*     \*

[Absent an agreement of the parties on the award] the court shall order child support in accordance with the guidelines *and* the other factors set forth in paragraph (b) *and* any departure therefrom.

    \*     \*     \*     \*     \*     \*

(b) In addition to the child support guidelines, the court shall take into consideration the following factors in setting or modifying child support:

(1) all earnings, income, and resources of the parents, including real and personal property;

(2) the financial needs and resources, physical and emotional condition, and educational needs of the child or children to be supported;

(3) the standards of living the child would have enjoyed had the marriage not been dissolved.

\*     \*     \*     \*     \*     \*

(d) Nothing shall preclude the court from receiving evidence on the above factors to determine if the guidelines should be exceeded or modified in a particular case.

(e) The above guidelines are binding in each case unless the court makes express findings of fact as to the reason for departure below or above the guidelines.

Minn.Stat. § 518.551, subd. 5.

Thus, while the statute provides for departure above or below the guidelines amount, it states that a court deciding to deviate must make express findings on the reasons for deviation, based on the factors set out in Minn.Stat. § 518.551, subd. 5(b). In this case, Zabloski and the guardian argue that the trial court abused its discretion by failing to fully consider Hall's standard of living, the factor listed in subdivision 5(b)(1).

In *Thompson v. Newman,* 383 N.W.2d 713 (Minn.Ct.App.1986), this court held that the intent of the standard of living factor "is that a child is entitled to enjoy the benefits of the incomes of both parents." *Id.* at 716. We further held that "whether the support order arises from a judgment of paternity or a dissolution, section [518.-551, subd. 5(b)(1) ] must be considered to determine what standard of living the child would have enjoyed if she or he had the benefit of both parents' incomes." *Id.*

The *Thompson* holding was restated in the subsequent parentage case of *Pitkin v. Gross,* 385 N.W.2d 367 (Minn.Ct.App.1986). In *Pitkin,* the obligor had net monthly income of $12,000. Although application of guidelines in effect at the time would have resulted in child support being set at $1500 per month, the trial court deviated down-

ward and awarded $900 per month. In so doing, the court suggested that it was inappropriate to consider the financial needs of a custodial parent when setting child support, and that such consideration would lead to an award which would be "grossly excessive when viewed solely from the standpoint of the needs of [the child]." *Id.* at 369–70. In rejecting this reasoning, we noted that the needs of the child and of the custodial parent are relevant factors when considering departure from the guidelines. *Id.* at 370. Thus, a downward deviation such as in *Pitkin* based on a child's limited needs could not occur without consideration of the custodial parent's needs. Because the trial court in *Pitkin* made no findings on the particular needs of either the child or the mother, its decision could not be upheld. *Id.* at 370.

In this case, the trial court's findings address not only the father's income, assets, and expenses, but also the mother's earning ability, living circumstances, and the child's personal needs. It found that if Zabloski were to complete her high school education, she would still be able to "generate only minimum or slightly above minimum wage income." It found that the child "appears to be a child of above-average intelligence who suffers from no mental, physical or emotional disabilities, and does not require any special attention or special care or training." In its memorandum, the court elaborated:

[T]here is nothing in the record herein showing this minor child to have any particular, special, unusual or distinctive needs, either physical, mental, emotional or educational. Indeed, he is a normal, ordinary, healthy three-year-old. He has no significant medical problem requiring treatment, no learning disability requiring special education, nor any other special need requiring an unusual level of support.

In support of its decision not to deviate, the trial court identified several reasons which are persuasive. First, after reciting Zabloski's claimed needs, the court found that she "has not prepared or presented to this Court an estimate of how much of this

proposed budget would represent the actual monthly expenses of the minor child." Based on the evidence submitted by the experts at trial regarding the amount of income which would normally be spent on a normal child, the court determined that the personal needs of the child are much less than the total sum claimed necessary by the mother for the child and family. Thus, the court determined that the child's personal needs did not exceed $1000 per month.

The court next made a distinction between the support which is legally required to be provided under the guidelines and the freedom of a parent to choose whether additional contributions are to be given. In this sense, the legislature has effectively declared that a child's needs are normally not higher than $1000 per month. *See Pitkin,* 385 N.W.2d at 370 ("The trial court's disregard for the guidelines is tantamount to a judicial objection to the amount set for support of a child where the obligor's income is high. A court may not substitute its opinion for the expressed intent of the legislature.") *See also Moylan,* 384 N.W.2d at 866 (Yetka, J., concurring specially) (Touching on concept that legislature cannot require parents to provide a minimum dollar amount for the support of their children beyond adequate food, clothing, and medical care: "This is because some families, even with great financial resources, might want to raise their children in a spartan atmosphere in order to impress upon their children the value of money and the sacrifice and effort required to raise it. Other parents might be extremely generous, granting their children material privileges few other children will ever see or experience in their lifetimes. Such is life.")

The court finally implied that while the mother's needs may be considered, it would be inappropriate to use a child support obligation to upgrade her standard of living. In this sense, a distinction was made between the mother's needs and the standard of living to be enjoyed by a family. The maximum appropriate award under the guidelines effectively suggests a normal "cap" on the use of support to upgrade a child's standard of living.

Similar reasoning has been adopted by courts in other jurisdictions. In *Jane Doe VI v. Richard Roe VI,* 736 P.2d 448 (Hawaii Ct.App.1987), a paternity proceeding, the noncustodial father appealed the award of child support. Hawaii statutes required that the court consider the standard of living and circumstances of the parents in a determination of child support. *Id.* at 455. Based on the father's average annual income of $110,000, the appellate court ordered "basic child support" to be set at $1600. The court held that the trial court had abused its discretion in making the total child support award. Of particular importance to this case are the following statements of the appellate court:

> We do not agree with [the father] that the need of the child is controlling. Nor do we believe, however, that the child's support should be determined mainly on the non-custodial father's standard of living. *Ellen N. v. Stuart K.,* 88 Misc.2d 280, 387 N.Y.S.2d 367 (1976). The court must be cognizant of the fact that "to raise [the mother's] standard of living through the vehicle of child support would constitute the imposition of an unauthorized obligation on part of the father toward the mother." *Kathy G.J. v. Arnold D.,* 116 A.D.2d 247, 255, 501 N.Y. S.2d 58, 64 (1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 927 [93 L.Ed.2d 979] (1987). Also, an award for child support is for the child's current needs based on the child's appropriate standard of living and not for the purpose of saving portions thereof for future needs.

*Jane Doe VI,* 736 P.2d at 456–57.

Examination of the trial court's findings and memorandum in this case satisfy us that Hall's standard of living was properly considered. We conclude that the court exercised its discretion within appropriate limits when it declined to deviate from the guidelines.

The guardian also contends that the trial court failed to properly and fully assess the child's special needs, as required by Minn. Stat. § 518.551, subd. 5(b)(2). The guardi-

an's demands, however, go beyond the ability of the trial court or of this court to predict what unusual or special needs this 3–year–old child might have at some point in the future. Any identifiable special needs may be an appropriate topic for modification as those needs are encountered.

Further, we do not believe that the trial court abused its discretion in refusing to appoint a trustee to manage and disburse the child support award.

Both Zabloski and the guardian request fees and costs on appeal totaling $14,-425.41. Without strenuously objecting to these requests, Hall points out that he paid all trial court fees and expenses, and that awards for past support create a resource for payment of some appellate expenses for the mother and child. We conclude Zabloski and the guardian should be awarded $4000 and $2500 attorney fees, respectively, together with their respective expenses on appeal of $3515.41 and $780.50.

### DECISION

The trial court's child support award is affirmed. Appellants are awarded fees and costs on appeal as stated above.

Affirmed.