In re the Marriage of Joann Marie
MARDEN, petitioner,
Appellant,

v.

Jeffrey Robert MARDEN, Respondent.

No. C1–95–1839.

Court of Appeals of Minnesota.

April 2, 1996.

Timothy L. Tingelstad, Faver, Schluchter & Tingelstad, Bemidji, for appellant.

Jana Austad, Kief, Fuller, Baer & Wallner, Bemidji, for respondent.

Before NORTON, P.J., TOUSSAINT, C.J., and MANSUR, J.[*]

## OPINION

NORTON, Judge.

The parties stipulated to a dissolution judgment that included an allocation of marital debt to respondent, directing him to hold appellant harmless regarding the debt. Appellant moved for modification of child support after respondent discharged the debt in bankruptcy, resulting in a debt repayment obligation for her. The district court denied mother's motion, noting that this denial was "required by law" but was not an equitable result. Because of errors of law and factual errors that improperly influenced the district court's decision, we reverse and remand.

## FACTS

Appellant Joann Marie Marden (mother) and respondent Jeffrey Robert Marden (father) were divorced on May 5, 1994. Mother was granted physical custody of the parties' two children. The parties stipulated that father would pay child support of $800 per month.

As part of the dissolution settlement, the parties also stipulated to a division of their marital debts. Father's portion of the debts included joint debt owed to Bemidji Federal

Credit Union and to AT & T. The dissolution decree provided that father "shall indemnify and hold [mother] harmless from any obligation" on this debt.

On or about July 5, 1994, just 60 days after the entry of the dissolution decree, father petitioned for discharge of his debts in bankruptcy. Father's debts were then discharged, including his obligation to pay marital debt. Bemidji Federal Credit Union and AT & T contacted mother to pay discharged debt of $19,600. Mother negotiated to make payments of approximately $500 per month on these debts over the next three to five years.

Mother moved the district court for a modification of child support, seeking an additional $500 per month for support. She based her request on the fact she had been required to pay father's portion of marital debt after he discharged those debts in bankruptcy. The requested support increase mother seeks would result in an upward deviation from the statutory guidelines.

The district court found that mother had demonstrated a change of circumstances that rendered the original support order unreasonable and unfair. The court stated that father's discharge in bankruptcy had harmed the children. But the court concluded that it was without authority to order an upward deviation from guidelines support, because mother had failed to show that the discharged debt was incurred for the parties' or the children's support or for the generation of income. The court also determined that mother had not provided necessary evidence of the children's needs to support her requested upward deviation from the guidelines.

## ISSUES

When a child support obligor discharges marital debt in bankruptcy, causing the obligee involuntarily to be responsible for paying the discharged debt, must the obligee satisfy the factors set forth in section 518.551, subdivision 5(d), before the court may consider

---

[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. Art. VI, § 10.

that debt when calculating a modification in child support?

## ANALYSIS

■ The district court has broad discretion to provide for the support of the parties' children. *Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn.1984). This court will not reverse the district court's decision on modification of child support unless that decision was clearly erroneous. *Id.* at 51.

The district court may modify child support only after a party shows a change of circumstances that makes the existing order unreasonable and unfair. Minn.Stat. § 518.64, subd. 2(a) (1994); *Kuronen v. Kuronen,* 499 N.W.2d 51, 53 (Minn.App.1993), *review denied* (Minn. June 22, 1993). The court may find a change of circumstances upon one or more of the factors shown in Minn.Stat. § 518.64, subd. 2(a)(1) to (6).

The district court here found that father's discharge of debt in bankruptcy, resulting in a $500 per month payment obligation on mother's part, constitutes a change of circumstances that renders the original child support order unreasonable and unfair. Father expressly concedes that this finding is not erroneous.

■ Notwithstanding his concession that his discharge in bankruptcy renders the existing support order unreasonable and unfair, father argues that the court may not, as a matter of law, modify support after bankruptcy because to do so would shift the debt back to father and thus impermissibly overturn the bankruptcy court's order. We disagree. We recognize that "postdissolution orders may not later circumvent a federal bankruptcy discharge of a property settlement." *Coakley v. Coakley,* 400 N.W.2d 436, 440 (Minn.App.1987), *review denied* (Minn. Apr. 23, 1987). But where a child support obligor's discharge in bankruptcy negatively affects the obligee's financial circumstances, the obligee may seek modification of child support under Minn.Stat. § 518.64. *Foster v. Childers,* 416 N.W.2d 781, 785–86 (Minn.App. 1987); *see also Coakley,* 400 N.W.2d at 441 (affirming modification based on changed circumstances after obligor's bankruptcy shifted debt obligations onto obligee). Modification of the dissolution decree under Minn.Stat. § 518.64 does not impermissibly impact the discharge of debt in bankruptcy.

■ We next turn to the requirements for determining the proper amount of support. After the court finds that a change of circumstances has made the prior support order unreasonable and unfair, the court must then determine the amount of support by applying Minn.Stat. § 518.551, subd. 5 (1994). Minn. Stat. § 518.64, subd. 2(b)(1). Section 518.551 enumerates six factors that the court must take into consideration "in setting or modifying child support or in determining whether to deviate from the guidelines." Minn.Stat. § 518.551, subd. 5(c)(1) to (6). Among those six factors, the court must consider "the parents' debts as provided in paragraph (d)." *Id.,* subd. 5(c)(5). Paragraph (d) provides:

> In establishing or modifying a support obligation, the court may consider debts owed to private creditors, but only if:
>
> (1) the right to support has not been assigned under section 256.74;
>
> (2) the court determines that the debt was reasonably incurred for necessary support of the child or parent or for the necessary generation of income. * * *; and
>
> (3) the party requesting a departure produces a sworn schedule of the debts, with supporting documentation, showing goods or services purchased, the recipient of them, the amount of the original debt, the outstanding balance, the monthly payment, and the number of months until the debt will be fully paid.

*Id.* subd. 5(d).

The district court determined that paragraph (d) applies to mother's obligation to repay the debt discharged by father. The court concluded that it could not consider mother's $500 monthly payments on this obligation, because mother had not provided information whether the original debt was incurred for the necessary support of the children, the parents, or the generation of income. Mother argues, and we agree, that

the district court misinterpreted and therefore misapplied the statute's debt provision.

■ The fundamental rule of statutory construction is that the court should construe a statute according to its plain and ordinary meaning. *Nadeau v. Austin Mut. Ins. Co.,* 350 N.W.2d 368, 373 (Minn.1984); *Heaslip v. Freeman,* 511 N.W.2d 21, 22 (Minn.App. 1994), *review denied* (Minn. Feb. 24, 1994); *see also* Minn.Stat. § 645.16 (1994) (when words of statute "in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit").

Minn.Stat. § 518.551, subd. 5(d)(2), refers to debts that a party has "incurred." *Black's Law Dictionary* defines "incur," in relevant part, as:

> To become liable or subject to, to bring down upon oneself, as to incur debt, danger, displeasure and penalty, and become through one's own action liable or subject to.

*Black's Law Dictionary* 768 (6th ed.1990). The *American Heritage Dictionary* defines "incur" as: "To become liable or subject to as a result of one's action; bring upon oneself." *American Heritage Dictionary* 916 (3rd ed.1992).

Here, father discharged a marital debt from which he had agreed to hold mother harmless. Mother did not bring the liability on herself, nor did she become liable for father's discharged debt through her own action or inaction. In fact, mother was proactive about her liability for the debt, obtaining a promise from father that he would hold her harmless. This promise was incorporated into the parties' dissolution decree. Under these conditions, we hold that mother did not "incur" father's discharged debt; section 518.551, subdivision 5(d), does not apply to mother's obligation to pay father's discharged debt. It was improper for the district court to look at the fact that mother had jointly incurred the original debt for which father had assumed all liability under the parties' stipulated settlement. The district court could have, and should have, considered mother's obligation to pay the discharged debt to determine the appropriate level of support under Minn.Stat. § 518.551. The court erred in not doing so.

■ Our review, however, does not end with the district court's erroneous decision that it could not consider the discharged debt when determining the appropriate level of support. The court also determined that a grant of even one-half of the requested modification of $500 per month would result in an unfair upward deviation from the guidelines. But the district court based this determination on what appear to be erroneous findings regarding father's net income and the needs of the mother and children.

The district court found that father had net monthly income of $2,325. Father's affidavit, however, alleges net monthly income of $2,445.66 after a deduction of $121.66 for personal debt. This debt is not one of the permitted deductions for determining net income for purposes of calculating guideline support. *See* Minn.Stat. § 518.551, subd. 5(b) (listing statutory deductions for calculation of "net income"). It appears that the district court recognized this error, but erroneously deducted the debt a second time, rather than adding it back to determine father's net monthly income. The district court's apparent miscalculation of father's net income may have further influenced its determination that an increase in support would be unfair.

Further, the district court erroneously found that mother failed to present necessary evidence regarding the children's needs and standard of living. To grant a deviation from the guidelines, as mother seeks here, the court must make findings that "specifically address the criteria in [section 518.551, subdivision 5(c) ]." Minn.Stat. § 518.551, subd. 5(i). Those criteria include the parents' income and resources, the child's financial and educational needs, and the child's standard of living. Here, the district court stated:

> Specifically, no information was presented indicating that the children have special needs or require special assistance of any kind and no evidence was presented regarding the children's standard of living

when the parties were married vis-a-vis the current situation.

The district court also found "[t]here was no showing that the current level of child support was insufficient to meet the current needs of the children." The record and law do not support the district court's view of the circumstances here.

■ First, it is not always necessary to separate the children's needs from the custodial parent's needs when deviating from the guidelines. *Cf. Swick v. Swick,* 467 N.W.2d 328, 332 (Minn.App.1991) (affirming downward deviation from support guidelines where trial court found that mother had combined expenses of $1,689.78 for herself and parties' two children), *review denied* (Minn. May 16, 1991). Here, the record shows that mother and the children live in the same home that the family, including father, lived in during the parties' marriage. Mother detailed her family expenses in her affidavit. That budget lists expenses, almost all of which are for the homestead mortgage, insurance, utilities, real estate taxes, food, automobile, medical, dental, clothing, and mother's $500 per month payment for father's discharged debt.[1] Mother repeatedly stated that she was not asking the court to improve the financial circumstances and standard of living for her and the children. Under these circumstances, substantially undisputed by father, separate findings of the children's needs appear to be unnecessary.

Second, the district court quoted the following statement of this court to explain its concern that mother had not provided a breakdown of the children's needs:

[T]he legislature has effectively declared that a child's needs are normally not higher than $1000 per month. * * * [W]hile the mother's needs may be considered, it would be inappropriate to use a child support obligation to upgrade her standard of living. In this sense, a distinction was made between the mother's needs and the standard of living to be enjoyed by a family. The maximum appropriate award under the guidelines effectively suggests a normal "cap" on the use of support to upgrade a child's standard of living.

*State v. Hall,* 418 N.W.2d 187, 190 (Minn. App.1988), *review denied* (Minn. May 4, 1988). But this court in *Hall* was referring to circumstances markedly different from those present here. In *Hall,* the mother's income had consisted of $437 in A.F.D.C. benefits and approximately $120 of food stamps prior to the child's birth. *Id.* at 187. At a paternity trial, she submitted a proposed monthly budget of $3,143. *Id.* at 188. She appealed the trial court's decision to grant her guideline support of $1,000, rather than her requested upward deviation from the guidelines. *Id.*

In contrast to *Hall,* here mother is *not* asking the court to place her and her family in a better financial position, but only to maintain the standard of living established during the parties' marriage and prior to father's discharge of his debt just 60 days after the dissolution of that marriage. The district court found that father's action here had negatively affected the children. The concerns in *Hall* are not present here.

■ Finally, we note that a court may deviate upward from the guidelines if the custodial parent is unable to sustain a child's accustomed standard of living, and the obligor has the ability to do so. *McNulty v. McNulty,* 495 N.W.2d 471, 473 (Minn.App. 1993), *review denied* (Minn. Apr. 12, 1993). A division of mother's budget in equal shares for her and her three children results in combined expenses of the parties' two children that exceed father's child support of $800 per month. The record also demonstrates that father has excess income after

---

1. We also note that the district court found that mother's monthly expenses are $2,531. But the court did not explain how it reduced mother's family expenses by $1,100. This amount far exceeds any discretionary expense in mother's budget. The court's finding seems to be a typographical error. Mother has monthly income of $3,139 from employment and child support for the parties' children and a child from a prior relationship. If the court meant to find that mother's monthly needs for her and the children were $2,531, then mother would have excess monthly income of $600. Under these circumstances, it makes no sense for the district court to state, as it did, that father's discharge of debt negatively affected his children. On remand, the district court should review its finding regarding mother's expenses.

meeting his needs and current child support obligation. Accordingly, the record here could support a modification of father's support obligation. Yet, the district court's decision indicates that the court believed it could not, as a matter of law, deviate from the guidelines on the record here. This conclusion was based on errors of law and what appear to be erroneous findings of fact, as noted above.

## DECISION

The district court erred when it determined that mother's obligation to repay father's discharged debt was a personal debt "incurred" by mother within the meaning of Minn.Stat. § 518.551, subd. 5(d). The district court erred in failing to consider mother's obligation to repay father's discharged debt. The district court made various erroneous findings that also misinformed its decision to deny mother's request for an upward deviation from the guidelines.

**Reversed and remanded.**