**In re the Marriage of Wendy Kathryn KAHN, petitioner, Respondent,**

v.

**Robert John TRONNIER, Appellant.**

**No. CX–95–2441.**

Court of Appeals of Minnesota.

May 7, 1996.

Review Denied July 10, 1996.

Marilyn J. Michales, Honsa and Michales, P.A., Minneapolis, for respondent.

Judith L. Oakes, J. Oakes & Associates, St. Paul, for appellant.

Considered and decided by PETERSON, P.J., and HUSPENI and MANSUR,* JJ.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

**OPINION**

MARTIN J. MANSUR, Judge.

Appellant-father Robert John Tronnier claims the district court abused its discretion in setting his child support obligation at double the guideline amount. Respondent-mother Wendy Kathryn Kahn claims the district court abused its discretion by terminating her maintenance award, not compelling father to produce financial information, and denying her motion for attorney fees. We affirm the termination of maintenance and the denial of mother's motion to compel discovery. We reverse and remand the issues of child support and attorney fees.

The parties were married in 1980 and had one child. When the parties stipulated to a 1986 judgment dissolving their marriage, mother was a medical school intern and father was a doctor making over $100,000 annually. The parties also recognized that their child (then age three) had special needs. Under an amended dissolution judgment, mother was awarded physical custody of the child, father's support obligation was set by a formula, father was ordered to pay various amounts of maintenance through December 1991, after which the district court retained jurisdiction over maintenance, and maintenance would be terminated upon either party's death.

The parties' child, while "quite bright," suffers from several neurological disorders. After the dissolution, mother and child moved to New York. It is undisputed that the child requires constant and intensive supervision. To provide this supervision, mother limits her time at work to 22 hours per week and spends the rest of her time caring for the child. Because mother does not work full-time, the only benefit her employer provides her is malpractice insurance.

Father continued paying maintenance after mother remarried in 1989. He also continued paying maintenance after December 1991. In 1994, the professionals with whom mother consulted regarding the child recommended that mother put the child in a special

pointment pursuant to Minn.Const. art. VI, § 10.

school for education and treatment purposes. To do so would cost $38,000 per academic year. After father remarried in fall 1994, he told mother that he would not pay maintenance after December 1994.

In January and March 1995, mother moved for $3,145 in monthly child support, $1,895 in permanent monthly maintenance, attorney fees, and to compel father to produce financial information. Father moved to continue the hearing and either for custody of the child or an evidentiary hearing. After a hearing on father's motion, the referee issued an April order, which denied father's request for custody or an evidentiary hearing because father had produced "no responsible evidence" to support his custody request, found both parties self-sufficient and refused to award attorney fees, and denied mother's motion to compel discovery.

After a hearing on mother's motion, the referee issued a July order, which found: (a) mother's net monthly income was $3,143; (b) the reasonable monthly living expenses of mother and child were $4,769.11; (c) father's 1994 gross annual income was $221,160.98; (d) father's reasonable monthly living expenses were $3,410; (e) one of the professionals described the child's behavior as "in a class by [it]self"; and (f) mother's part-time employment and care for the child precluded her from any retirement planning. The referee then awarded mother $1,250 in monthly maintenance through January 2004, and $1,536 in monthly support; a $205 upward departure from the guideline amount.

Father sought district court review of the July order. In October 1995, the district court noted that the parties' dissolution judgment did not specifically state that maintenance continued beyond mother's remarriage and terminated mother's maintenance award. The district court also set father's support obligation at $2,662, twice the guideline amount.

## ISSUES

1. Was it an abuse of the district court's discretion to set father's support obligation at double the guideline amount?

2. Was it an abuse of the district court's discretion to terminate mother's maintenance award?

3. Was it an abuse of the district court's discretion to deny mother's discovery requests?

4. Was it an abuse of the district court's discretion to deny mother's motion for attorney fees?

## ANALYSIS

 While the parties have appealed issues addressed in both the April and July orders, neither party sought district court review of the April order. District court review of a referee's order is not a prerequisite to our review of that order, but district court review

> is in the nature of a motion for amended findings or a new trial and would affect the scope of review on appeal to this court accordingly.

*Warner v. Warner,* 391 N.W.2d 870, 873 (Minn.App.1986) (citing *Gruenhagen v. Larson,* 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976)). Under *Gruenhagen,* absent a motion for a new trial, appellate review is limited to determining whether the evidence sustains the findings of fact and whether the findings support the conclusions of law and the judgment. *Gruenhagen,* 310 Minn. at 458, 246 N.W.2d at 569.

 1. The district court has broad discretion in setting support and its decision will not be altered on appeal absent a "clearly erroneous conclusion that is against logic and the fact on record * * *." *Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn.1984).[1]

### A. *Error as a Matter of Law*

 Father claims that the district court erred as a matter of law by awarding above

1. Citing several unpublished opinions of this court, mother claims entitlement to support of double the guideline amount. Unpublished opinions are of limited value in deciding this appeal. *See Dynamic Air, Inc. v. Bloch,* 502 N.W.2d 796, 801 (Minn.App.1993) (while unpublished opinions may be persuasive, "[t]he legislature has unequivocally provided that [they] are not precedential" and noting the dangers and unfairness associated with their use are great).

guideline support based solely on his income. *See Sherburne County Social Serv. v. Riedle,* 481 N.W.2d 111, 113 (Minn.App.1992) (a support obligor's income is not independently sufficient for an upward departure from guidelines). Here, however, in addition to considering father's income, the district court considered the sufficiency of mother's income and property, the child care and educational costs resulting from the child's psychological condition, and what the child's standard of living would have been had the parties not divorced.

Father also claims that under *State v. Hall,* the guidelines provide a presumptive "cap" on a support obligation and that his support obligation should not exceed that cap. *See Hall,* 418 N.W.2d 187, 190 (Minn. App.1988) ("[t]he maximum appropriate award under the guidelines effectively suggests a normal 'cap' on the use of support to upgrade a child's standard of living"). *Hall* is distinguishable because that child suffered "no mental, physical or emotional disabilities, and d[id] not require any special attention or special care or training." *Id.* at 189.

### B. *Findings*

■ Father claims his support obligation is defective because the district court did not make the required findings.

If the court deviates from the guidelines, the court *shall* make written findings giving the amount of support calculated under the guidelines, the reasons for the deviation, and *shall specifically address* the criteria in paragraph (c) and how the deviation serves the best interest of the child.

Minn.Stat. § 518.551, subd. 5(i) (Supp.1995) (emphasis added); *see* Minn.Stat. § 645.44, subd. 16 (1994) (" '[s]hall' is mandatory").

■ The district court did not "specifically address" the criteria in Minn.Stat. § 518.551, subd. 5(c).[2] While the district court set father's support obligation above the guideline amount based on the costs associated with the child's special needs, it did not make findings on those costs, and they are not included in the finding of mother's reason-

able monthly expenses. *See Finch v. Marusich,* 457 N.W.2d 767, 769 (Minn.App.1990) (district court erred in awarding above guideline support based, in part, on child's special needs where trial court did not find costs associated with those needs). Absent findings on the expenses associated with the child's special needs, it is unclear whether father's support obligation is excessive and improperly supplementing mother's standard of living. *See Hall,* 418 N.W.2d at 190 (" 'to raise [the mother's] standard of living through the vehicle of child support would constitute the imposition of an unauthorized obligation on part of the father toward the mother' ") (citation omitted).

Further, while father claimed monthly expenses of $7,953, and the referee found his reasonable monthly expenses to be $3,410, the district court apparently rejected the referee's finding, stating that father's current standard of living "approach[ed] indulgent." The district court did not, however, make a finding regarding father's reasonable monthly expenses. Therefore, his standard of living, which bears on the standard of living the child would have enjoyed but for the parties' divorce, is unclear. Absent the required findings, we remand the child support issue. *See Hicks v. Hicks,* 533 N.W.2d 885, 887 (Minn.App.1995) (support remanded where temporary downward departure from guidelines not supported by required findings).

■ 2. Mother claims the district court erred in terminating maintenance based on her remarriage.

Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

Minn.Stat. § 518.64, subd. 3 (1994). Here, the parties' judgment does not "expressly" address the impact of mother's remarriage on her receipt of maintenance and there is no claim that the parties "otherwise agreed in

---

**2.** We note that the memorandum accompanying the rule 53 review order is a valid source of findings. *See* Minn.R.Civ.P. 52.01 ("[i]t will be sufficient if the findings of fact and conclusions of law * * * appear in * * * an accompanying memorandum").

writing" that maintenance would continue beyond mother's remarriage.

In *Gunderson v. Gunderson*, 408 N.W.2d 852 (Minn.1987), the judgment stated that maintenance would continue for 42 months, the maintenance recipient remarried before maintenance ended, and the district court, reading the judgment to make maintenance unconditional, denied the obligor's request to terminate maintenance. The supreme court reversed, stating:

> Section 518.64, subdivision 3 requires that a decree state *expressly* that maintenance will continue beyond remarriage. The decree involved here did not. This absence is not remedied by evidence that the parties intended maintenance to continue unconditionally. * * * [E]vidence of how parties view a maintenance obligation, whether taken from negotiations or a stipulation, is irrelevant to the issue of whether maintenance should continue past remarriage given section 518.64, subdivision 3's requirement that any such provision be positively expressed in the decree. If a decree does not reflect the understanding of the parties regarding maintenance, the solution is to amend the decree.

*Gunderson*, 408 N.W.2d at 853 (emphasis in original) (citation omitted).

In *Telma v. Telma*, 474 N.W.2d 322, 323 (Minn.1991), maintenance was to continue until the earlier of two conditions, neither of which was the recipient's remarriage. Also, the maintenance payor waived "any right" he had under chapter 518 to modify the amount or duration of maintenance. *Id.* When the recipient remarried before either condition for terminating maintenance, the payor moved to terminate his obligation. The district court denied the motion and this court reversed. On appeal, the supreme court stated:

> [T]he trial court correctly interpreted and enforced both [the payor's] unequivocal

waiver of his right to seek a modification of the spousal maintenance award and that portion of the agreement authorizing a termination of the award on the occurrence of either of two specific events, neither of which was [the recipient's] remarriage. While in [*Gunderson*], we stated that Minn.Stat. § 518.64, subd. 3 required that a marital dissolution decree state expressly that maintenance will continue beyond remarriage, we did not foreclose the consideration of clear written expressions of the parties' intention in this regard as ascertained from their agreement as a whole.

*Id.* Telma then cited *Karon v. Karon*, 435 N.W.2d 501 (Minn.1989) [3] and reinstated the district court's ruling. *Id.*

In *Poehls v. Poehls*, 502 N.W.2d 217 (Minn.App.1993), the dissolution judgment included a *Telma*-like provision, terminating maintenance on either of two conditions, neither of which was the recipient's remarriage. The *Poehls'* judgment, however, lacked a *Telma*-like waiver of the payor's right to modify maintenance. When the *Poehls* maintenance recipient remarried, the payor moved to terminate maintenance. The district court denied the motion. On appeal, this court "decline[d] to read the *Telma* decision as substantially abrogating the legislative directive of Minn.Stat. § 518.64, subd. 3," and ordered termination of the payor's maintenance obligation, stating that

> [t]he parties have not waived any rights to seek modification in this case and no clear written expression of the parties' intentions regarding remarriage appears in the record.[4] In these circumstances, consistent with *Gunderson*, we must enforce Minn.Stat. § 518.64, subd. 3 as written.

*Poehls*, 502 N.W.2d at 218–19. Here, because this case is similar to *Poehls* in that the parties' judgment lacks both an "express" statement that maintenance would continue after mother's remarriage and a waiver by

---

**3.** *Karon* addresses parties' ability to waive their right to receive maintenance. *Karon*, 435 N.W.2d at 503.

**4.** Because this case lacks a claim that there is a writing apart from the judgment which contains the parties' agreement for maintenance to continue beyond remarriage, *Poehls'* reference to

the "record" as the place to look for the parties' intent regarding remarriage is inapplicable here, and we look only at the judgment itself. *See* Minn.Stat. § 518.64, subd. 3 (remarriage terminates maintenance "[u]nless otherwise agreed in writing or *expressly provided in the decree*") (emphasis added).

the obligor of his right to modify maintenance, the district court correctly terminated maintenance. Further, mother's claim that she "needs" maintenance, even if true, is not sufficient to allow maintenance to continue. *See Gunderson,* 408 N.W.2d at 854 ("[a]bsent Minn.Stat. § 518.64, subd. 3, equitable principles may well have entitled [the maintenance recipient] to maintenance for the full 42 months stipulated. However, we decline to abrogate Minn.Stat. § 518.64, subd. 3 by judicial fiat").

 3. Mother challenges the district court's denial of her motion to compel father to produce financial information. Generally, whether to grant a discovery request is discretionary with the district court. *Pearson v. Henkemeyer,* 503 N.W.2d 504, 508 (Minn.App.1993), *review denied* (Minn. Sept. 30, 1993). Here, however, at oral argument before this court, father conceded that his finances were sufficient to pay the support obligation ordered by the district court. Under these circumstances, if the trial court's refusal to require father to produce the financial information was an error, that error was harmless. *See* Minn.R.Civ.P. 61 (harmless error to be ignored).

4. Mother challenges the denial of her motion for attorney fees. The court shall award attorney fees if the recipient needs the fees for a good faith assertion of their rights and the payor can afford to pay them. Minn.Stat. § 518.14, subd. 1 (1994). The district court has broad discretion regarding attorney fees and will not be reversed absent a clear abuse of that discretion. *Nemmers v. Nemmers,* 409 N.W.2d 225, 228 (Minn.App.1987). Because we must remand the child support issue, we lack the information necessary to perform the financial balancing required to determine the propriety of a need-based attorney fee award. Therefore, we also remand the issue of an award to mother of need-based attorney fees for any alteration necessary in light of any

change occurring in father's child support obligation.[5]

## DECISION

Because the parties' dissolution judgment lacks an express statement that maintenance would continue beyond mother's remarriage and because mother remarried, the district court properly terminated maintenance. The issue of child support, however, must be remanded for the findings required by statute. On remand, the district court shall reevaluate the propriety of an award to mother of need-based attorney fees in light of any change in father's support obligation. Nothing in this opinion should be construed as an expression of how to decide the remanded issues. Also, on remand, the district court shall have discretion regarding whether to reopen the record.

**Affirmed in part, reversed in part, and remanded.**

---

5. We reject mother's claim that the district court erred in denying her motion for conduct-based attorney fees. The district court stated that both parties "contributed to the unnecessary length of these proceedings." Mother does not challenge the facet of this finding indicating that she prolonged the proceedings. None of the cases mother cites in her brief to support her argument for conduct-based attorney fees involves an award of attorney fees to a party who had unnecessarily prolonged proceedings.