In re Debra Ann STRANDBERG, Petitioner, Respondent,

v.

Brian Paul STRANDBERG, Appellant.

No. C6–02–2246.

Court of Appeals of Minnesota.

July 22, 2003.

David W. Buchin, St. Cloud, MN, for respondent.

Lynne M. Ridgway, St. Cloud, MN, for appellant.

Considered and decided by TOUSSAINT, Chief Judge, STONEBURNER, Judge, and MINGE, Judge.

## OPINION

MINGE, Judge.

Child support obligor appeals the district court's order for child support and asserts that the district court abused its discretion by failing to consider the resources and needs of the obligee and the child, including a state adoption subsidy, during the time obligor was unemployed and his income was below poverty-level guidelines. Because the adoption subsidy, the obligor's resources, and the obligee's and child's resources and needs are relevant to the child support determination, we reverse and remand.

## FACTS

The marriage of appellant Brian Paul Strandberg and respondent Debra Ann Strandberg was dissolved in January 2002. The parties have one adopted minor child, for whom the state pays a monthly adoption subsidy. When the parties separated, Debra, as the custodial parent, received the adoption subsidy.

The question of child support was determined after the marriage dissolution. The matter was initially heard by a child support magistrate (CSM). At the hearing before the CSM, the parties stipulated to the following facts:

— When the parties separated in March 2001, Brian's net monthly income was $1,513.54.

— Brian lost his job on July 26, 2001, and from August 1, 2001 to March 4, 2002, his net monthly income, from unemployment compensation, was $850. He was neither volun-

tarily unemployed nor voluntarily underemployed.

— On March 4, 2002, Brian became employed, and his net monthly income increased to $1,120.50. His net monthly income was $1,350 on June 21, 2002, the date support was determined.

— From March 1, 2001 to June 21, 2002, Brian's monthly expenses were $1,684.

— From March 1, 2001 to June 21, 2002, Debra's net monthly income was $1,762.

— From March 1, 2002 to June 21, 2002, Debra received the adoption subsidy, which ranged from $397 to $427 per month.

— Brian did not pay any direct child support to Debra during the 10 months while the marriage dissolution was pending.

The CSM determined that Brian owed child support, including arrearages, but that he was entitled to a downward deviation from the child support guidelines. The CSM's determination was based on Brian's limited resources; the resources available to Debra, including the state adoption subsidy; and the amount of time the child spent with Brian.

Pursuant to a motion for review filed by Debra, the determination of the CSM was considered by the district court. The district court (1) determined that Brian was not entitled to a downward deviation from the guidelines, that the summer visitation schedule did not support an adjustment in support, and that the state adoption subsidy could not be considered in determining child support or child support arrearages; (2) did not address the relevance of Brian's resources being below the poverty level, of Debra's resources, or of the child's resources in setting support or support arrearages; and (3) ordered payment of child support and arrearages according to the child support guidelines.

## ISSUE

Did the district court abuse its discretion by not considering the financial circumstances of the child support obligor, obligee, or the child in setting child support and arrearage obligations at the level specified in the statutory guidelines?

## ANALYSIS

■■■ District courts have broad discretion in determining child support. *Marden v. Marden,* 546 N.W.2d 25, 27 (Minn.App.1996). In reviewing decisions of child support magistrates, district courts are not required to give any deference to those decisions. *Blonigen v. Blonigen,* 621 N.W.2d 276, 280 (Minn.App. 2001), *review denied* (Minn. Mar. 13, 2001). A reviewing court affirms the district court's support determination if that determination has a reasonable and acceptable basis in fact. *Buntje v. Buntje,* 511 N.W.2d 479, 481 (Minn.App.1994). A reviewing court will find an abuse of discretion where it finds a clearly erroneous conclusion that is against logic and the facts on record. *Moylan v. Moylan,* 384 N.W.2d 859, 864 (Minn.1986).

■■■ Generally, the obligation to pay child support is based on the obligor's ability to pay. *Schneider v. Schneider,* 473 N.W.2d 329, 332 (Minn.App.1991). This is reflected in the child support guidelines, which are set forth at Minn.Stat. § 518.551, subd. 5(b) (2002). The child support guidelines are a "rebutable presumption and shall be used in all cases when establishing or modifying child support." Minn.Stat. § 518.551, subd. 5(i) (2002). If the court does not deviate from the guidelines, the statute requires written findings

concerning the amount of the obligor's income used as the basis for the guidelines calculation and any other significant evidentiary factors affecting the determination of child support.

*Id.* In addition to the child support guidelines, a court "shall" consider:

all earnings, income, and resources of the parents, including real and personal property * * * [and] the financial needs and resources, physical and emotional condition, and educational needs of the child or children to be supported.

Minn.Stat. § 518.551, subd. 5(c)(1), (2) (2002).

Here, the district court refused to consider the state adoption subsidy in setting child support. The child support statute requires the district court to consider the "financial needs *and resources*" of the child. *Id.* (emphasis added). We have previously held that the adoption subsidy is a resource attributable to the child for purposes of reimbursing the county for the cost of care provided to the child in an out-of-home placement. *County of Ramsey v. Wilson,* 526 N.W.2d 384, 387 (Minn.App. 1995). In *Wilson,* we noted that social security benefits, supplemental security income, veterans benefits, and railroad retirement benefits are all considered "income and resources attributable to the child." *Wilson,* 526 N.W.2d at 387 (discussing Minn.Stat. § 260.251, subd. 1(b) (1990 & 1992)). We concluded that the adoption subsidy is similar to those resources "because none of these payments would be made if there were no child." *Id.* Just as the adoption subsidy is considered a resource of the child for purposes of reimbursing the county for out-of-home placement, the adoption subsidy is a resource of the child for purposes of determining child support.

The district court's refusal to consider the adoption subsidy in setting child support was based on the adoption subsidy statute, which provides that "adoption assistance payments received under this section shall not affect eligibility for any other financial payments to which a person may otherwise be entitled." Minn.Stat. § 259.67, subd. 9 (2002). This limit on consideration of the subsidy does not conflict with child support determinations because the subsidy does not affect *eligibility* for child support, at most it affects the *level* of support.

■ Even to the extent there is some perceived limit on consideration of the adoption subsidy, it should be resolved in favor of factoring the subsidy into available resources. Otherwise, the language in the adoption subsidy statute unnecessarily conflicts with the child support statute's mandate that a court is to consider "financial needs and resources" of the child when setting support. Minn.Stat. § 518.551, subd. 5(c). In this case, excluding the adoption subsidy from consideration in setting child support produces an unreasonable result. The overarching policy of the child support statute is to ensure that children's needs are met. *Murphy v. Murphy,* 574 N.W.2d 77, 81 (Minn.App. 1998). The child support statute and guidelines are also based on the obligor's ability to pay. *Schneider,* 473 N.W.2d at 332. In light of those principles, it is reasonable to consider the adoption subsidy as a resource available for meeting the child's needs, particularly in cases like this where the obligor parent cannot cover his own expenses. It is inappropriate to have litigants pushed into poverty by child support obligations that are set without considering all of the resources available to meet the needs of the child. Accordingly, we conclude that the adoption subsidy should be considered a resource of the child when determining child support.

We do not hold that the adoption subsidy should be treated as a mandatory offset to child support or an automatic reduction of the guideline amount. Nor are we holding that low-income obligors are relieved of their child support obligations. Rather, the treatment of the adoption subsidy and whether the subsidy affects the support obligation depends on the needs of the child and the financial circumstances of the obligor and obligee.

 The district court should have made additional findings on Debra's resources. In this case, Brian's resources were inadequate to meet his needs and put him at or below the poverty level for at least part of the arrearages period. Debra's resources exceeded her expenses and those of the child. These are "significant evidentiary factors affecting the determination of child support." *See* Minn.Stat. § 518.551, subd. 5(i). Accordingly, the district court should have considered these factors in its written findings.

## DECISION

Because the district court did not consider the adoption subsidy, and because the district court did not make adequate findings regarding the needs and resources of the parties involved, we reverse and remand for determination of child support consistent with this opinion.

**Reversed and remanded.**