2006 OK CIV APP 73

**Bruce David GAMBILL, Plaintiff/Appellant,**

v.

**Donetta GAMBILL, Defendant/Appellee.**

No. 101,183.

Court of Civil Appeals of Oklahoma, Division No. 2.

March 28, 2006.

Certiorari Denied May 30, 2006.

Bruce David Gambill, Pawhuska, OK, pro se.

Bill R. Scarth, Scarth & Rahmeier, Claremore, OK, for Defendant/Appellee.

Opinion by JANE P. WISEMAN, Presiding Judge.

¶1 Father, Bruce David Gambill, appeals from a decree of divorce. The issue presented is whether the trial court erred in calculating child support for the parties' minor children. Upon review of the record on appeal and applicable law, we find that the trial court did abuse its discretion when it failed to consider farm income when determining Mother's gross income for child support computations but did not err in refusing to consider an adoption subsidy and social security survivors' benefits when calculating child support payments.

### FACTS AND PROCEDURAL BACKGROUND

¶2 Father and Mother, DonEtta Gambill, were married on April 6, 1995. The couple adopted two children during the course of their marriage, M.A.G., born January 19, 1998, and G.W.G., born on March 8, 1999. Father filed a petition for divorce on October 3, 2003. Following trial, the court divided the marital estate, awarded sole legal custody of the minor children to Mother with visitation to Father, and ordered Father to pay $1,165.93 monthly for child support.

¶3 On appeal, Father asserts that the trial court erred in computing child support. The trial court found that Father's monthly income is $7,746, consisting of $7,322.92 in regular monthly salary and $440.79 in excess benefit allowance. The court found Mother's

average monthly income to be $1,609.59 from her work as a real estate broker.

¶ 4 Father testified at trial that Mother had received $9,000 the previous year from a soybean crop harvested from a farm, part of which was owned by Mother prior to the parties' marriage and part of which was acquired during the marriage, and that Mother receives $350 per month in rent from a farm house that Mother owned prior to marriage. Father testified that the parties also receive an adoption subsidy of $300 per month per child from the State of Oklahoma and social security survivors' benefits of "roughly a little over $300 total for both children." Mother testified that, at the time of trial, she was receiving the adoption subsidy and social security payments which together totaled $912 per month.

¶ 5 In determining the amount of income attributable to Mother for the purpose of computing child support, the trial court did not include the crop or rental income, the adoption subsidy, or the social security benefits. Father appeals.

## STANDARD OF REVIEW

¶ 6 Child support proceedings are matters of equitable cognizance. *Burgess v. Burgess*, 2000 OK CIV APP 122, ¶ 10, 15 P.3d 526, 528. On appeal from matters involving child support, this Court will affirm the order of the trial court "if it is just and equitable." *Id.* "We may only reverse the trial court's computation of child support if it is clearly against the weight of the evidence." *Andersen v. Fellers*, 1998 OK CIV APP 53, ¶ 9, 960 P.2d 851, 854.

¶ 7 Father asserts the trial court should have considered the government benefits paid on behalf of the children as a credit against his child support obligation, as part of the gross child support of both parties, or as income attributable to Mother. The question of whether the trial court properly declined to consider the government benefits presents a question of law. *See Dye v. White*, 1999 OK CIV APP 20, ¶ 1, 976 P.2d 1086, 1086. "Issues of law are reviewed *de novo* since an appellate court has plenary, independent and non-deferential authority to reexamine a trial court's legal rulings." *K & H Well Serv., Inc. v. Tcina, Inc.*, 2002 OK 62, ¶ 9, 51 P.3d 1219, 1223.

## ANALYSIS

### I. Crop and Rental Income

¶ 8 Father asserts that the trial court erred in computing child support by excluding income Mother receives for crops and rental income. Father states that the parties owned an income-producing farm property, part of which, including a rent house, was Mother's separate property, and part of which was jointly acquired during the marriage.

¶ 9 Mother included the following in her pretrial financial declaration as property individually owned by her: "Farm house, valued at approximately $65,000, with no land. It sits on a lot, and continues to be in my name, only, DON ETTA PATTERSON. At this time, there is no debt associated with this property." The same document also contains the following statements under the heading "Business Interests": "(a) [Mother] continues to maintain her separate property farm house as a rental property. (b) The income generated from the farm house rental is considered by her to be her separate property income. (c) It is believed that the characteristic of this rental property is her 'separate property.'" Mother retained both the farm and the farm rent house under the divorce decree.

¶ 10 "All child support shall be computed as a percentage of the combined gross income of both parents." 43 O.S. Revised Supp.2005 § 118(E)(1). Gross income "includes earned and passive income from any source" except income that is specifically excluded under the statute. 43 O.S. Revised Supp.2005 § 118(E)(2)(a)(1). Earned income is "income received from labor, or *the sale of goods or services* and includes, but is not limited to, income from: (a) salaries, (b) wages, (c) commissions, (d) bonuses, and (e) severance pay." 43 O.S. Revised Supp.2005 § 118(E)(2)(a)(2) (emphasis added). Passive income is "all other income and includes, but is not limited to, income from: (a) dividends, (b) pensions, (c) *rent*, (d) interest income, (e)

trust income, (f) annuities, (g) social security benefits, (h) workers' compensation benefits, (i) unemployment insurance benefits, (j) disability insurance benefits, (k) gifts, (*l*) prizes, and (m) royalties." 43 O.S. Revised Supp. 2005 § 118(E)(2)(a)(3) (emphasis added). "For income from self-employment, rent, royalties, proprietorship of a business, or joint ownership of a partnership or closely held corporation, 'gross income' is defined as gross receipts minus ordinary and necessary expenses required for self-employment or business operations." 43 O.S. Revised Supp. 2005 § 118(E)(3)(a).

¶ 11 Under the terms of Section 118, income received by Mother for crops or rental should have been included in her gross income for purposes of child support computation. Mother asserts on appeal that tax returns filed by the parties prior to the divorce show that the farm house rental and the crops resulted in losses for tax purposes. Mother points to six income tax returns that show a farm income loss and four tax returns that show a rental income loss.

¶ 12 Although previous tax returns indicate a loss for both the crop sales and the rental property, the presentation of the tax returns alone cannot end our inquiry into Mother's gross income. "Taxable income on an income tax return does not control 'income' for child support purposes." *Minnich v. Minnich*, 1995 OK CIV APP 60, ¶ 9, 898 P.2d 747, 750. The Court of Appeals in *Minnich* went on to say, "[Section] 118(B)(3) requires the court to carefully review income and expenses from the operation of a business and determine an appropriate level of gross income to be used to determine the amount available to use in calculating child support." *Id.*

¶ 13 The record does not reflect the trial court's decision on Father's request to include the crop income and farm house rental in Mother's gross income for purposes of calculating child support. We find that the trial court abused its discretion in failing to determine if Mother receives any positive income from the farm or rental property after expenses. Mother testified that no money was owed on the rental property.

She admitted receiving money for the house rental and the crops, but claims there is no positive cash flow from either enterprise because expenses exceed income. Other than the tax returns, Mother does not disclose the amount of money received from the crops and rent payments in relation to her expenses. We must remand to determine the ordinary and necessary expenses attributable to these sources of income received by Mother and to determine if Mother has any positive income from the crops or rental property that should properly be used to calculate child support.

*II. Adoption Subsidy and Social Security Benefits*

¶ 14 Father asserts that the trial court erred when it failed to consider the adoption subsidy and social security survivors' benefits that Mother receives on behalf of the children. We disagree.

¶ 15 Congress enacted the Adoption Assistance and Child Welfare Act of 1980 to provide adoptive parents financial assistance to adopt children with special needs. *See Laws v. State of Oklahoma ex rel. Dept. of Human Serv.*, 2003 OK CIV APP 97, ¶ 3, 81 P.3d 78, 80. In response, the State of Oklahoma enacted the Oklahoma Adoption Assistance Act which required the Department of Human Services to establish and administer an ongoing program of adoption assistance for eligible special needs children. 10 O.S. Revised Supp.2005 § 7510–1.3(A). Section 7510–1.3(B) authorizes assistance in the form of "Medicaid coverage, a monthly adoption assistance payment, reimbursement of nonrecurring adoption expenses, special services, or any combination of such benefits." Mother receives an adoption subsidy of $600 per month from the State of Oklahoma for the children, and, according to Father, the children receive health care benefits through the SoonerCare program.

¶ 16 Although we are not aware of any Oklahoma decisions that have addressed the treatment of adoption subsidies when calculating child support, courts in other jurisdictions have addressed the issue. In *In re Marriage of Newberry*, 346 Ill.App.3d 526, 282 Ill.Dec. 21, 805 N.E.2d 640 (2004), the

Appellate Court of Illinois found that adoption subsidies should be treated as belonging to the children, not the parents. The Court noted that Illinois law provides a deviation from its statutory child support guidelines if a court finds that the child support required to be paid under the guidelines would be inappropriate based on the financial resources and needs of the child. *Id.* at 643. The Court determined, under the circumstances before it, that the trial court's downward deviation from the guidelines in calculating the child support obligation of the father was appropriate in light of the monthly adoption subsidy that was a resource of the children available for their support. In reaching its conclusion, the Court noted that the parties' net incomes were approximately equal. *Id.* at 644.

¶ 17 In *Strandberg v. Strandberg*, 664 N.W.2d 887 (Minn.Ct.App.2003), the Court of Appeals of Minnesota also found that an adoption subsidy is a resource attributable to the child for purposes of determining child support. The Court noted that by state statute a district court is required to consider the financial needs and resources of the child. *Id.* at 890. The Court held that "the treatment of the adoption subsidy and whether the subsidy affects the support obligation depends on the needs of the child and the financial circumstances of the obligor and obligee." *Id.* at 891.

¶ 18 In *In re Hennessey–Martin*, 151 N.H. 207, 855 A.2d 409 (2004), the New Hampshire Supreme Court found that a trial court properly declined to credit a state adoption subsidy against the child support obligation of the non-custodial parent. The Court stated,

> Forcing a custodial parent to accept the adoption assistance payment as a substitute for the non-custodial parent's child support would negate the supplementary effect of the adoption subsidy because it would transform the adoption subsidy into the exclusive means of support and disregard the increased costs associated with the care of "special needs" children.

*Id.* at 413.

¶ 19 In *Hamblen v. Hamblen*, 203 Ariz. 342, 54 P.3d 371 (Ct.App.2002), the Court of Appeals of Arizona found that an adoption subsidy is for the benefit of the child and should be considered as income attributed to the child, not as a credit against child support. The Court stated the following:

> [T]he subsidy is but an addition to a parent's obligation of financial support. If this subsidy were credited against the parent's child-support obligation it would in effect, eliminate the supplementary effect of the subsidy. And, once the supplementary effect of the subsidy is taken, the effect of its incentive is undermined, leaving the custodial parent of the subsidized child with reduced if any support and greater difficulty in meeting the child's particular needs.

*Id.* at 375.

¶ 20 In *In re Marriage of Bolding–Roberts*, 113 P.3d 1265 (Colo.Ct.App.2005), the Colorado Court of Appeals declined to reduce a father's child support obligation based on his child's adoption subsidy. The Court noted that the adoption subsidy was a supplement which was intended to allow the adoptive parents to address the special needs of the children. The Court reasoned:

> "A child support order is calculated to serve the best interests of children and to mitigate the potential harm to them caused by the dissolution of marriage.... Had the parties not separated, the child would have enjoyed the benefit of both parents' incomes, as well as the subsidy. Thus, the underlying intent of the child support statute is best served by declining to offset a noncustodial parent's support obligation by the amount of an adoption subsidy or to consider the subsidy as a factor that may diminish the child's basic needs within the meaning of [Colorado statutory law]."

*Id.* at 1268 (citation omitted).

¶ 21 We find persuasive the decisions finding that an adoption subsidy is income attributable to the child. The adoption subsidy is meant to supplement adoptive parents' income for the benefit of the special needs child. The subsidy is in no sense attributable to either parent. It is paid for the benefit of the children and is not a substitute for a parent's income.

¶ 22 As to the social security survivors' benefits received by M.A.G. and G.W.G. due to the death of their natural father, we find that these benefits are also income attributable to the children. We note that, although 43 O.S. Revised Supp.2005 § 118(E)(2)(a)(3) includes "social security benefits" under "passive income," the social security benefits in question here were not earned or accrued by either Father or Mother but by the children's natural father and therefore do not fall under this provision. " 'Social Security benefits are not gratuitous, but are earned, and they constitute, in effect, insurance payments substituting for lost earning power.' " *Merritt v. Merritt,* 2003 OK 68, ¶ 18, 73 P.3d 878, 884 (quoting *Nibs v. Nibs,* 1981 OK 25, ¶ 1, 625 P.2d 1256, 1257 (Lavender, J., dissenting)).

¶ 23 In *Graham v. Graham,* 1988 OK CIV APP 9, 761 P.2d 1298, the trial court found that a father did not need to contribute to the support of the parties' adopted child because the child received social security benefits attributable to her deceased biological mother. The Court of Appeals reversed the decision of the trial court, finding that the trial court erred because its order, in effect, required the 12 year-old daughter to support herself.

¶ 24 A similar situation arose in *In re Marriage of Beacham,* 19 Kan.App.2d 271, 867 P.2d 1071 (1994), where the Kansas Court of Appeals found that an adoptive father was not entitled to a reduction in his child support obligation because his adopted child received social security benefits as the result of her natural father's death. The Court found that the adoptive father has a duty to support his child and the social security payments the child receives are not directly or indirectly attributable to the adoptive father. The Court stated, "Appellant has a duty to support his child, and his duty is not relieved because of payments received by the child which are in no way attributable to him." *Id.* at 1074. The Court further found that the benefit payments could not be included in the mother's income when calculating child support.

¶ 25 Having found that the adoption subsidy and survivors' benefits are income attrib-

utable to the children, we also recognize that Section 118 makes no provision for considering the income or resources of the child when computing child support. The trial court, under 43 O.S. Revised Supp.2005 § 118(E)(1), must compute child support "as a percentage of the combined gross income of both parents," and the only relevant gross incomes are those of Mother and Father.

¶ 26 Gross income includes earned and passive income, except income specifically excluded under Section 118(E)(2)(b)(1), which excludes child support received for children not before the court. Gross income also does not include "benefits received from means-tested public assistance programs including, but not limited to: (a) Temporary Assistance for Needy Families (TANF), (b) Supplemental Security Income (SSI), (c) Food Stamps, and (d) General Assistance and State Supplemental Payments for Aged, Blind and the Disabled." 43 O.S. Revised Supp. § 118(E)(2)(b)(2).

¶ 27 Neither the adoption subsidy nor the social security survivors' benefits is based on the income or means of Mother or Father. The subsidy and survivors' benefits are not specifically excluded from inclusion as gross income by subsection (b). However, the benefits also do not fit into any classification of income under the terms of the parents' earned or passive income. Because the adoption subsidy and social security survivors' benefits are not income attributable to the parents but income of the children not specifically addressed in Section 118, we must conclude that neither the adoption subsidy nor the social security survivors' benefits can be considered in the income attributable to Mother for the purpose of calculating child support.

¶ 28 Any consideration of the adoption subsidy or social security survivors' benefits under the child support guidelines could only be made under Section 118(B) which allows for deviations from the guidelines under the following circumstances:

> The district or administrative court may deviate from the amount of child support indicated by the child support guidelines *if the amount of support so indicated is un-*

*just, inequitable, unreasonable, or inappropriate under the circumstances, or not in the best interests of the child.* If the district or administrative court deviates from the amount of child support indicated by the child support guidelines, the court shall make specific findings of fact supporting such action.

(Emphasis added.) No deviation from the guidelines appears warranted because there is no indication that the failure to include the adoption subsidy or survivors' benefits in calculating income results in an amount of support that is "unjust, inequitable, unreasonable, or inappropriate under the circumstances."

¶ 29 Although Father alludes to the fact that M.A.G. and G.W.G. do not have special needs, Mother testified that G.W.G. suffers from attention deficit disorder with hyperactivity and anxiety disorder. She also testified she has taken G.W.G. to "[a]pproximately a hundred to 150" sessions with psychologists and she must transport him one or two times a week to various specialists and experts. She also received a recommendation to place G.W.G. in a private school to obtain help for the difficulties he was encountering. Mother also testified that M.A.G. has developmental problems. Based on these facts, we cannot say that the child support award in relation to the extra money the children receive from the adoption subsidy and survivors' benefits renders the amount of the child support under the guidelines "unjust, inequitable, unreasonable, or inappropriate under the circumstances, or not in the best interests of the child[ren]."

¶ 30 We find that the trial court did not err in refusing to consider either benefit for the purpose of child support computation.

### III. Insurance

¶ 31 Father claims that the trial court's decision to require him to continue to pay for health insurance benefits for the children works as a penalty against him because it requires double coverage. He states, "All of the children's medical needs were paid or covered by Soonercare through the Department of Human Services as an adoption sub-

sidy and the Pawnee Benefit Package though the Indian Health Service because both children and [Father] are Native American participants."

¶ 32 We cannot say that the trial court abused its discretion in requiring Father to continue to pay for private health care coverage. Father fails to point to any portion of the record which indicates that the private health coverage is not needed or that health care coverage provided by the State of Oklahoma or Indian Health Service meets all of the required health care needs of the children.

### IV. Mother's request for attorney fees on appeal

¶ 33 In seeking appeal-related attorney fees, Mother points out that Father is proceeding *pro se* and that she does not enjoy the same financial advantage. The fact that Father is not paying an attorney to prosecute this appeal does not require him to pay Mother's appeal-related expenses. There is no indication that Father has taken any action which complicated the matter during the appeals process or that the appeal was frivolous or lacking in merit. We find that Mother should bear her own attorney fees for this appeal. *See Stepp v. Stepp,* 1998 OK 18, ¶ 20, 955 P.2d 722, 726–27 (holding parties responsible for their own appeal-related attorney fees where no compelling equities existed in favor of either party).

### CONCLUSION

¶ 34 We find that the trial court abused its discretion in failing to fully account for Mother's income from a farm and a rental house when determining her gross income for child support purposes. We also find that the trial court did not err when it refused to offset an adoption subsidy and social security survivors' benefits against Father's child support obligation or to include the benefits as income in computing child support. We further find that the trial court did not abuse its discretion when it required Father to pay for health care insurance for the children. Accordingly, the order of the trial court is

affirmed in part, reversed in part, and remanded for further proceedings.

¶ 35 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

GOODMAN, J., concurs, and GABBARD, J. (sitting by designation), concurs in part and dissents in part.

GABBARD, J., concurring in part and dissenting in part:

¶ 1 I dissent to the Majority's opinion that this case should be remanded for the purpose of taking additional evidence on the issue of the rent and farm income.

¶ 2 Mother testified that she had no *net* income from her rent house and farm crops because expenses exceeded income. To support this statement, she produced tax returns for the last six years. Father had the opportunity to cross-examine her regarding this evidence, and to present evidence on his own behalf. His contention that she receives an annual income of approximately $9,000 did not take into account her expenses and was otherwise unsupported by any documentation. The trial court had sufficient evidence to make a decision regarding this issue, and decided in Mother's favor. When there is conflicting evidence on an issue of fact, we defer to the trial court, which is in the best position to observe the behavior and demeanor of the witnesses and to gauge their credibility. *Mueggenborg v. Walling*, 1992 OK 121, 836 P.2d 112. The trial court was persuaded by Mother's testimony and evidence, and was unpersuaded by Father's testimony.

¶ 3 Because the trial court's decision on this issue is supported by the greater weight of the evidence, I find no reason for remand. I would affirm *in toto*.