(318 P.3d 672)
No. 109,771

In the Matter of the Marriage of DONALD THOMAS, *Appellant*, and LISA THOMAS, *Appellee*.

Opinion
filed February 14, 2014.

*Donald Thomas,* appellant pro se.

*Robert E. McRorey,* of Law Office of Robert E. McRorey, of Olathe, for appellee.

Before MALONE, C.J., GREEN and BRUNS, JJ.

GREEN, J.: Donald Thomas appeals from the trial court's decree of divorce. As part of the divorce decree, Donald was ordered to pay his former spouse, Lisa Thomas, $315 per month in child support. On appeal, Donald argues that the trial court erred in calculating child support because it failed to reduce or eliminate his support obligation based on a monthly adoption subsidy that Lisa received from the State of Kansas.

Donald's argument is misplaced. The plain language of the Kansas Child Support Guidelines (guidelines) shows that adoption subsidies should be excluded from a custodial parent's domestic gross income when calculating child support. Accordingly, we affirm.

Donald and Lisa were married on February 14, 1997. During the marriage, Donald and Lisa adopted one minor child, M.W. Citing incompatibility, Donald petitioned for divorce from Lisa on April 5, 2012. That same day, Donald moved for an issuance of temporary orders. In part, Donald requested physical custody of M.W. and child support from Lisa. Lisa answered Donald's divorce petition and moved for temporary orders on April 11, 2012. Similar to Donald's motion, Lisa asked for physical custody of M.W. and child support. Specifically, Lisa requested $355 per month in child support beginning May 1, 2012.

The trial court ruled in a temporary order that "neither party should pay child support to the other based on the equal parenting time arrangement of the parties." Lisa later moved for child support in the amount of $456 per month.

Following a hearing before a hearing officer, Donald was ordered to pay $592 per month in child support effective September 1, 2012. Donald appealed from the hearing officer's order. At a

pretrial conference, Donald's counsel maintained that the hearing officer miscalculated the child support amount because she had failed to consider the $500 per month adoption subsidy that Lisa received from the State of Kansas. Donald argued that when the monthly adoption subsidy was attributed to Lisa's income, his child support obligation should have been only $8 per month.

Later, relying on *Gambill v. Gambill*, 2006 OK CIV APP 73, 137 P.3d 685, the trial court ruled that the $500 per month adoption subsidy was not attributed to Lisa as income and therefore did not reduce Donald's child support obligation. The trial court reasoned:

"[T]he underlying intent of the child support statute is best served by declining to offset a noncustodial parent's support obligation by the amount of adoption subsidy or to consider the subsidy as a factor that may diminish the child's basic needs within the meaning of the child support laws. . . . The subsidy is in no sense attributable to either parent. It's paid for the benefit of the children and not a substitute for the parent's income."

The trial court ordered Donald to pay $315 per month in child support.

*Whether Lisa's Receipt of a Monthly Adoption Subsidy Should Be Offset Against Donald's Child Support Obligation or Included as Income in Computing Child Support*

On appeal, Donald's principal argument is that his obligation to pay child support should be reduced or eliminated because Lisa receives a $500 per month adoption subsidy for M.W. Lisa contends that this court should refrain from reaching the merits of Donald's argument because he has failed to provide a sufficient record to establish error and because Donald has failed to object to the trial court's findings of fact and conclusions of law. In the alternative, Lisa argues that the adoption subsidy should not reduce Donald's obligation to pay child support. Because Lisa's alternative contention is dispositive of this matter, we will address it first.

"The standard of review of a district court's order determining the amount of child support is whether the district court abused its discretion, while interpretation and application of the Kansas Child Support Guidelines are subject to unlimited review." *In re*

*Marriage of Leoni*, 39 Kan. App. 2d 312, 317, 180 P.3d 1060 (2007), *rev. denied* 286 Kan. 1178 (2008).

" 'Use of the guidelines is mandatory and failure to follow the guidelines is reversible error. [Citations omitted.] Any deviation from the amount of child support determined by the use of the guidelines must be justified by written findings in the journal entry. [Citations omitted.] Failure to justify deviations by written findings is reversible error. [Citation omitted.]' " *In re Marriage of Cox*, 36 Kan. App. 2d 550, 553, 143 P.3d 677 (2006).

When the facts of a case fall outside the guidelines, however, the guidelines do not limit the power of the trial court, and review is strictly one of abuse of discretion. *Cox*, 36 Kan. App. 2d at 553. A judicial action constitutes an abuse of discretion if the action: (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). The party asserting that the trial court abused its discretion bears the burden of showing this abuse of discretion. *State v. Wells*, 289 Kan. 1219, 1226, 221 P.3d 561 (2009).

The trial court correctly pointed out that no Kansas case has addressed the treatment of adoption subsidies when calculating child support. Even so, the Kansas Child Support Guidelines and the Kansas Adoption Support Act of 1972 are broad enough to encompass the treatment of adoption subsidies. The Kansas Adoption Support Act of 1972, K.S.A. 38-319 *et seq.*, provides adoptive parents financial assistance to adopt children with special needs. K.S.A. 38-324 contains the eligibility requirements for prospective parents seeking adoption support:

"A prospective parent seeking adoption support hereunder shall be a person who has the character, judgment, sense of responsibility and disposition which makes him or her suitable as an adoptive parent under the provisions of K.S.A. 59-2101 *et seq.*, and who lacks the financial means fully to care for such child. Factors to be considered by the secretary in setting the amount of any payment or payments to be made pursuant to this act shall include: The size of the family, including the adoptive child; the usual living expenses of the family; the special needs of any family members; and the family income. Whenever it appears to the secretary that the adoptive parents are no longer in need of adoption support, such support shall be terminated."

Under the guidelines, gross income is defined as follows:

"The Domestic Gross Income for the wage earner is income from all sources, including that which is regularly or periodically received, excluding public assistance and child support received for other children in the residency of either parent. For purposes of these guidelines, the term 'public assistance' means all income, whether in cash or in-kind, which is received from public sources and for which the recipient is eligible on the basis of financial need. It includes, but is not limited to, Supplemental Security Income (SSI), Earned Income Credit (EIC), food stamps, Temporary Assistance for Needy Families (TANF), General Assistance (GA), Medicaid, Low Income Energy Assistance Program (LIEAP), Section 8, and other forms of public housing assistance." Kansas Child Support Guidelines § II.D. (2013 Kan. Ct. R. Annot. 123.)

Based on the definition of domestic gross income, adoption subsidies are excluded from a parent's income when calculating child support. Indeed, the guidelines expressly exclude public assistance from domestic gross income. Here, the State provided Lisa with a $500 monthly adoption subsidy as financial assistance to care for M.W. Although the record is unclear as to M.W.'s special needs, the State determined that Lisa was eligible to receive the subsidy under K.S.A. 38-324 because she lacked "the financial means fully to care for such child." Because public assistance—income received from public sources based on financial need—is excluded from domestic gross income, Lisa's $500 monthly adoption subsidy from the State could not be included as part of her income. Thus, the trial court properly excluded the $500 monthly adoption subsidy as income to Lisa.

Moreover, several other states have held that an adoption subsidy is not attributed to the parents as income. Instead, the subsidy is attributed to the child. Below, the trial court relied on *Gambill* in reaching its decision. The trial court's reliance on *Gambill* was sound, and we find *Gambill* persuasive. In *Gambill*, Mother and Father adopted two children during the course of their marriage, M.A.G. and G.W.G. Father filed a petition for divorce. At trial, Father testified that Mother received an adoption subsidy of $300 per month per child from the State of Oklahoma. Following trial, the court divided the marital estate, awarded sole legal custody of the minor children to Mother with visitation to Father, and ordered Father to pay $1,165.93 monthly for child support. In determining

the amount of income attributable to Mother for the purpose of computing child support, the trial court did not include the adoption subsidy. On appeal, Father contended that the trial court erred in computing child support.

The *Gambill* court held that the trial court properly refused to consider an adoption subsidy when calculating child support payments. *Gambill*, 2006 OK CIV APP 73, ¶¶ 1, 34. In reaching its decision, the *Gambill* court relied on several decisions from other jurisdictions that had held that "an adoption subsidy is income attributable to the child," not the parent. See, *e.g., Hamblen v. Hamblen*, 203 Ariz. 342, 54 P.3d 371 (App. 2002); *In re Marriage of Bolding-Roberts*, 113 P.3d 1265 (Colo. App. 2005); *Strandberg v. Strandberg*, 664 N.W.2d 887 (Minn. App. 2003); *In re Hennessey-Martin*, 151 N.H. 207, 855 A.2d 409 (2004); see also *Martin v. Martin*, 303 P.3d 421, 427 (Alaska 2013) ("We consider the adoption subsidies to be similar to child support received for other children and conclude they should not be included in a parent's income . . . .") The *Gambill* court reasoned that "the subsidy is in no sense attributable to either parent. It is paid for the benefit of the children and is not a substitute for a parent's income." *Gambill*, 2006 OK CIV APP 73, ¶ 21.

Similarly, Kansas law describes the purpose of child support as follows:

"The purpose of child support is to provide for the needs of the child. The needs of the child are not limited to direct expenses for food, clothing, school, and entertainment. Child support is also to be used to provide for housing, utilities, transportation, and other indirect expenses related to the day-to-day care and well-being of the child." Kansas Child Support Guidelines § II.A.

We determine the adoption subsidy is income attributable to the child, M.W., and it is paid for the benefit of M.W. and is not a substitute for a parent's income for child support purposes. Moreover, the adoption subsidy could not be considered income attributable to Lisa for the purpose of calculating child support.

Affirmed.