Matter of Barbara T. v Acquinetta M. (2018 NY Slip Op 05736)





Matter of Barbara T. v Acquinetta M.


2018 NY Slip Op 05736


Decided on August 9, 2018


Appellate Division, First Department


Gesmer, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 9, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick, J.P.
Rosalyn H. Richter
Sallie Manzanet-Daniels
Peter Tom
Ellen Gesmer,JJ.


7055 

[*1]In re Barbara T., Petitioner-Respondent,
v
Acquinetta M., Respondent-Respondent, The Children's Law Center, on behalf of Ja-Quel M., Appellant. Lawyers For Children and Covenant House New York, Amici Curiae.



The Children's Law Center appeals from the order of the Family Court, New York County (Adetokunbo O. Fasanya, J.), entered on or about April 20, 2017, which dismissed, for lack of standing, its objections to order, same court (Tionnei Clarke, Support Magistrate), entered on or about February 14, 2017 (Support Order), and affirmed the Support Order in its entirety.




Karen P. Simmons, The Children's Law Center, Brooklyn (Janet Neustaetter and Dawn Post of counsel), for appellant.
Zachary W. Carter, Corporation Counsel, New York (Jane L. Gordon and Devin Slack of counsel), for Commissioner of Social Services, respondent.
Boom Health Legal Services, Bronx (Sahar Shams of counsel), for [*2]Acquinetta M., respondent.
Karen Freedman, Lawyers For Children, Inc., New York (Betsy Kramer of counsel), for Lawyers For Children, amicus curiae.
Nancy Downing, New York, for Covenant House New York, amicus curiae.



GESMER, J.


The essential facts are not in dispute. Ja-Quel M. was born on December 21, 2000. In or about 2010, he was removed from his birth mother's home and placed in non-kinship foster care with respondent Acquinetta M. (mother or Ms. M), who thereafter adopted him[FN1]. When the adoption became final, in or about April 2014, she began to receive a monthly adoption subsidy for Ja-Quel, which was administered by the Administration for Children's Services (ACS). The amount of the subsidy indicates that Ja-Quel had been identified as a child requiring "exceptional" services (18 NYCRR 421.24[a][6]).
On December 2, 2015, the petitioner in this proceeding, Ja-Quel's godmother, Barbara T. (guardian or Ms. T), filed a petition for guardianship of Ja-Quel. In or about February 2016, Ja-Quel began living with her full-time. Ms. M did not contest the petition, and it was granted on March 28, 2016.
In March 2016, Ms. M advised ACS that Ja-Quel was no longer living with her and that she wished to stop receiving the subsidy. Based solely on her request, ACS issued a notice to the mother dated April 13, 2016 stating that the subsidy had been "suspended" effective April 14, 2016 at her request. The last subsidy payment she received was in the amount of $1,944.01 on or about April 1, 2016.
On March 31, 2016, Ja-Quel's guardian filed a petition in Bronx Family Court seeking child support from Ms. M. On or about June 28, 2016, the Children's Law Center (CLC), which had represented Ja-Quel in the guardianship proceeding, was appointed, without any limitation, to represent him in the child support proceeding.[FN2]
On August 22, 2016, the Support Magistrate took testimony on the mother's defense that she was relieved of her obligation to support Ja-Quel because he had been constructively emancipated.
At the continuation of the hearing on September 12, 2016, Ms. M testified that her only income was Supplemental Security Income (SSI) in the amount of $779 per month. She further testified that the reason she was unwilling to receive the adoption subsidy for Ja-Quel was that she was concerned that his guardian could claim that she had not turned the funds over to her.[FN3]
At the conclusion of testimony on September 12, 2016, the Support Magistrate was advised that Ja-Quel's guardian had applied for and obtained public assistance benefits for him of $91 per week. Consequently, the Support Magistrate determined that the Department of Social Services (DSS) was an interested party (Social Services Law [SSL] § 348[2]), and she issued an order transferring the proceeding to New York County Family Court. At the same time, she issued a temporary order of support directing the mother to pay the statutory minimum, $25 per month, thus rejecting CLC's arguments that the adoption subsidy should be considered in setting temporary child support.
On October 26, 2016, CLC filed a motion in Family Court, New York County, requesting leave to continue to appear on Ja-Quel's behalf in the transferred proceeding, and asking that child support be based on the amount of the adoption subsidy. The motion was supported by, inter alia, an email to CLC counsel from the Program Manager of ACS's Post-Adoption Support Services Unit, which stated, "If the adoptive parent(s) requests a suspend payment [and] th[e]n they later decide to resume receiving the subsidy payments, they must forward a notarized letter to ACS post adoption customer service, indicating that is their request. This request can be processed up until the adopted child's 21st birthday."
On November 30, 2016, DSS moved before New York County Family Court in support of CLC's motion seeking support in the amount of the adoption subsidy, and seeking permission to appear as an interested party. The latter request was granted.
On February 7, 2017, Support Magistrate Clarke issued an order granting CLC's motion only to the extent that CLC "may appear as attorney for the subject child." The order contains no limitation on the scope of CLC's representation.
On February 14, 2017, Support Magistrate Clarke issued written findings of fact. She found that Ms. M remained legally responsible for the child's support until he reached the age of 21, regardless of the award of guardianship to Ms. T. She determined that Ms. M's pro rata share of the basic child support obligation, based on her SSI income, was the statutory minimum of [*3]$25 per month[FN4]. She further determined that the adoption subsidy is properly treated as a resource of the child in determining whether the basic child support obligation is unjust or inappropriate, but found that she could not direct the mother to pay child support in an amount equal to the subsidy, since she was no longer receiving the subsidy. She further found that deviating from the basic child support obligation based on the subsidy would be "tantamount to . . . forcing the Respondent to seek to reinstate the adoption subsidy," and declined to do so. Consistent with her decision, on February 14, 2017, Magistrate Clarke issued a final child support order, which directs the mother to pay $25 per month to the child's guardian as child support.[FN5]
Both DSS and the child's attorney filed timely objections to the Support Magistrate's order. On April 20, 2017, Family Court (Fasanya, J.) denied the objections. With regard to the objections filed by CLC, the court found that CLC did not have standing to object to the child support order because it was only appointed to address the mother's defense of constructive emancipation, and because the Family Court Act does not specify that objections may be filed by a child's attorney (FCA § 439[e]). The court further found that, were it to entertain CLC's arguments, it would deny the objections because it is "inappropriate, if not illegal, for a person to apply for and receive adoption subsidies for a minor who is not in said person's care," and because an adoptive parent "may opt not to receive any subsidies and care for said child solely out of pocket." The court applied the same reasoning to deny DSS's objections. The court therefore confirmed the Support Magistrate's order.
CLC now appeals from the denial of its objections. DSS and amici curiae Lawyers for Children and Covenant House New York submit briefs in support of CLC's appeal, and the mother opposes it.
Standing
At the outset, Family Court erred in determining that CLC did not have standing to file objections in Family Court[FN6]. Family Court may appoint attorneys for children in cases in which such appointments are not mandatory, including in child support matters, where doing so "will serve the purposes" of the Family Court Act (FCA § 249). The preference for appointment of counsel for children in Family Court "is based on a finding that counsel is often indispensable to a practical realization of due process of law and may be helpful in making reasoned [*4]determinations of fact and proper orders of disposition" (FCA § 241).
The record before us does not support Family Court's determination that CLC was appointed to represent the subject child solely in connection with issues of constructive emancipation and abandonment. Rather, the record shows that the Support Magistrates in both Bronx and New York County Family Courts appointed CLC as attorney for the child with no limitations on the scope of its representation.
Although the mother argues that Family Court Act § 439(e) restricts the filing of objections to a "party or parties," we find that her reading is too narrow. That section does not prohibit children's attorneys, where appointed, from filing or rebutting objections to a Support Magistrate's order for three reasons. First, the statute is focused on the time frame for filing and not on the identity of the filers. It appears that the words "party" and "parties" are used in the general sense of persons or entities who have been served with a copy of the support order, rather than the strict sense of petitioner and respondent.
Second, children's attorneys are expected to participate fully in proceedings in which they are appointed. We base this conclusion on the broad language of section 249 authorizing appointment of attorneys for children in any type of proceeding, the legislative finding that children's attorneys can be "indispensable to a practical realization of due process of law" (FCA § 241), and the obligation of attorneys for children to zealously advocate for their clients and generally adhere to the ethical requirements applicable to all attorneys (22 NYCRR 7.2). It would make little sense for Family Court to be permitted to appoint attorneys for children in child support cases to assist it in carrying out the purposes of the Family Court Act and then not permit those attorneys to file or respond to objections. Indeed, published opinions in other cases acknowledge that they have been permitted to do so (see Matter of K.A. v M.S., 56 Misc 3d 1221[A], 2017 NY Slip Op 51113[U] [Fam Ct, Bronx County 2017] [child's attorney submitted response to father's objections to child support order]; Matter of D.S.S. v Timothy C., 114 AD3d 860 [2d Dept 2014] [child, by his attorney, appealed from Family Court order denying his objections to order of filiation]).
Finally, this case requires us to determine whether and how courts should consider adoption subsidies when setting child support. As discussed further below, adoption subsidies are a resource of the child. To prohibit the child's attorney from participating in the litigation of this issue would be absurd and would not aid the court in carrying out the purposes of the Family Court Act, which, in a child support matter, requires consideration of the child's resources, needs and aptitudes, inter alia (FCA § 413[f]). Accordingly, we find that the child's attorney had standing to file objections to the Support Magistrate's order.
The Adoption Subsidy and Child Support
For the reasons discussed below, we find that Family Court properly determined that an adoption subsidy should be considered as a resource of the child when determining child support, but that the court erred in failing to consider the mother's eligibility for the subsidy in determining whether the mother's basic child support obligation was unjust or inappropriate. We further find that child support should have been set at no less than the amount of the adoption subsidy for so long as Ms. M is eligible to receive the subsidy on Ja-Quel's behalf. We also find that further proceedings are necessary to determine whether the subsidy may be made available to Ms. M retroactive to the date of its suspension, and remand for these further proceedings.
New York has offered an adoption subsidy in some form since 1977 in order to "eliminate, or at the very least substantially reduce, unnecessary and inappropriate long-term foster care situations," which are both costly to the state and contrary to the best interests of children who are difficult to place due to physical or mental disabilities, age, or for other reasons (SSL § 450).
In 1980, Congress passed the Adoption Assistance and Child Welfare Act (42 USC §§ [*5]670—676) "to encourage greater efforts to find permanent homes for children" by, inter alia, subsidizing the adoption of special needs children (Glanowski v New York State Dept. of Family Assistance, 225 F Supp 2d 292, 305 n 8 [WD NY 2002] [quoting US Code Cong Admin News 1980 vol 3 at 1450-1451]; 42 USC § 673[a][1][A]). New York's adoption subsidy program comports with the federal requirements (Glanowski, 225 F Supp at 302), and is administered in New York City by ACS.
Foster parents apply for the subsidy prior to adoption (18 NYCRR 421.24[b], [c][1]), and sign a contract with ACS (18 NYCRR 421.24[c][3]). Although the contract signed by Ms. M is not in the record, the minimum provisions of such contracts are set by regulation (18 NYCRR 421.24[c][3]; see also New York State Office of Children and Family Services Adoption Subsidy and Non-Recurring Adoption Expenses Agreement [available at https://ocfs.ny.gov/adopt/subsidy.asp]). The applicable regulations further provide that the written agreement
"will remain in effect until the child's 21st birthday. No payments may be made if [ACS] determines that the adoptive parents are no longer legally responsible for the support of the child or the child is no longer receiving any support from such parents. Such written agreement must state that it will be the responsibility of the adoptive parent(s) to inform the appropriate State or local official when they are no longer legally responsible for the child or no longer providing any support to the child" (18 NYCRR 421.24[c][5]).
Similarly, the Social Services Law provides that, once approved, subsidy payments "shall be made until the child's twenty first birthday" (SSL § 453[1][a]) and that payment of the subsidy may only be suspended if ACS "determines that the adoptive parents are no longer legally responsible for the support of the child or the child is no longer receiving any support from such parents" (SSL § 453[1][c]; see also 42 USC § 673[a][4][A][ii], [iii])[FN7]. Accordingly, [*6]Family Court erred in determining that receipt of the subsidy, once the contract is entered into, is at the adoptive parent's election or that the subsidy terminates when the adoptive parent "opts" not to receive it. The mother's similar claim, apparently made for the first time on appeal and without citation to any legal authority, is also contrary to the plain language of the applicable state and federal statutes and regulations. Furthermore, the mother's claim that she was no longer eligible to receive the subsidy once Ja-Quel no longer resided with her, also made apparently for the first time on appeal and without citation to supporting legal authority, is contrary to the applicable statutes and regulations and the required language of the adoption subsidy agreement.
Although the statute does not presently permit anyone other than an adoptive parent to receive the subsidy on the child's behalf,[FN8] there is no statutory or regulatory requirement that the child continue to reside with the adoptive parent in order for the subsidy to continue. Accordingly, Family Court erred when it determined that it is "inappropriate, if not illegal, for a person to apply for and receive adoption subsidies for a minor who is not in said person's care." The mother's similar argument that it would be "illegal" for her to turn over the subsidy to the child's guardian, apparently made for the first time on appeal and without citation to legal authority, is also incorrect.
The mother also complains that her receipt of the subsidy makes her subject to periodic certification, which may require her to provide information to which she claims she no longer has access[FN9]. The mother has made this claim for the first time on appeal. Even if we could properly consider her claim, we would reject it. She cites no legal authority to support it. Moreover, it appears that ACS may only seek from the mother information about her own income (18 NYCRR 421.24[c][9]) and certification that the child is a full-time student or has completed [*7]secondary education (18 NYCRR 421.24[c][19])[FN10]. However, the mother has not claimed that the guardianship order prohibits her from obtaining such information about the child, either from his school or from the guardian. Moreover, the mother remains legally responsible for the child's support, and consented to participate in periodic certification as permitted by law when she entered into the contract for the adoption subsidy.
It appears that only two published opinions in New York address the treatment of adoption subsidies in determining child support (A.E. v J.I.E. (179 Misc 2d 663 [Sup Ct Bronx County 1999]; Matter of Commissioner of Social Servs. v Smith (75 AD3d 802 [3d Dept 2010]). In A.E. v J.I.E., Supreme Court (Gische, J.) determined that an adoption subsidy cannot be considered as income to a parent for the purposes of crediting it against, and thus decreasing, the non-custodial parent's child support obligation, citing Graby v Graby (87 NY2d 605 [1996] [Social Security payments received by the child of a disabled non-custodial parent cannot be included as income to that parent and credited against her support obligation]) and Matter of Commissioner of Social Services (Wandel) v Segarra (78 NY2d 220 [1991] [parent's duty to support child is not abrogated by child's receipt of public assistance]). The court reasoned, inter alia, that, if the parents had not divorced, the child would have received the benefit of both parents' income, in addition to the adoption subsidy. The court found that the subsidy may, however, be considered in determining whether the non-custodial parent's statutory child support obligation is "unjust or inappropriate" (FCA § 413[1][f]). That is precisely our holding in this case.
Courts around the country that have dealt with this issue have reached the same conclusion, noting that the adoption subsidy is intended both to encourage adoption of children who are hard to place and to provide supplemental funds to address the needs of these children[FN11] [*8](see In re Marriage of Bolding-Roberts, 113 P3d 1265, 1268 [Colo App 2005]; In re Marriage of Newberry, 805 NE2d 640, 643 [Ill App 2004]; In re Strandberg v Strandberg, 664 NW2d 887, 890 [Minn Ct 2003]; Hamblen v Hamblen, 54 P3d 371, 375 [Ariz Ct 2002]; see also County of Ramsey v Wilson, 526 NW2d 384 [Minn Ct 1995] [adoptive parent required to pay adoption subsidy to county to reimburse it for child's care in court-ordered out-of-home placement]). Many of the cases from other states emphasize the "supplementary" nature of the subsidy, and, like the court in A.E. v J.I.E., have determined that the child should receive the benefit of both parental income and the subsidy (see W.R. v C.R., 75 So3d 159, 169 [Ala Civ App 2011]; in re Marriage of Dunkle, 194 P3d 462, 466 [Colo App 2008]; Gambill v Gambill, 137 P3d 685, 691 [Okla Civ App 2006]).
As the Support Magistrate in this case correctly noted, adoptive parents, just like biological parents, remain legally responsible for the support of their children until they are 21 (FCA § 413[1][a]). The Support Magistrate also correctly determined that the adoption subsidy (see 18 NYCRR 421.24) is not income that can be imputed to the adoptive parent (see A.E. v J.I.E., 179 Mis 2d 663).
However, Family Court erred in determining that a deviation based on the subsidy would be improper because it would "force" the mother to take steps to undo the subsidy's suspension. Awarding child support in the amount of the subsidy is not unlike awarding support based on a parent's historic earning potential, which similarly requires the parent to do what the court has determined he or she is capable of doing based on past performance.
Family Court further erred in failing to properly consider the 10 factors set forth in FCA § 413(1)(f) to determine whether the mother's basic child support obligation is unjust or inappropriate. In particular, Family Court should have considered the first three statutory factors  the financial resources of the child, the physical and emotional health of the child and his special needs and aptitudes, and the standard of living the child would have enjoyed had he continued to reside with his mother  and the 10th factor: "[a]ny other factors the court determines are relevant in each case." Considering these factors, we find that awarding child support in at least the amount of the subsidy for so long as the mother is eligible to receive it on the child's behalf is an appropriate deviation from the basic child support obligation (see Smith, 75 AD3d 802).[FN12]
However, it is not clear from this record whether the mother may obtain the subsidy retroactive to the date on which it was suspended.
Accordingly, the order of the Family Court, New York County (Adetokunbo O. Fasanya, J.), entered on or about April 20, 2017, which dismissed, for lack of standing, appellant's objections to order, same court (Tionnei Clarke, Support Magistrate), entered on or about [*9]February 14, 2017 (Support Order), and affirmed the Support Order in its entirety, should be reversed, on the law, without costs, and the matter remanded to Family Court to issue a new child support order directing the mother to pay to Ja-Quel's guardian no less than the amount of the adoption subsidy for so
long as the mother remains eligible to receive the subsidy on her son's behalf, and for further proceedings to address the issue of whether the mother is entitled to receive the subsidy retroactive to the date of its suspension.
All concur.
Order, Family Court, New York County (Adetokunbo O. Fasanya, J.), entered on or about April 20, 2017, reversed, on the law, without costs, and the matter remanded to Family Court to issue a new child support order directing the mother to pay to Ja-Quel's guardian no less than the amount of the adoption subsidy for so long as the mother remains eligible to receive the subsidy on her son's behalf, and for further proceedings to address the issue of whether the mother is entitled to receive the subsidy retroactive to the date of its suspension.
Opinion by Gesmer, J. All concur.
Renwick, J.P., Richter, Manzanet-Daniels, Tom, Gesmer, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: AUGUST 9, 2018
CLERK



Footnotes

Footnote 1:Under New York law, upon entry of the order of adoption, the birth parents are relieved of, and the adoptive parent obtains, all parental rights and duties (Domestic Relations Law [DRL] § 117). 

Footnote 2:The order appealed from states that CLC was appointed on May 5, 2016 "to address the issues of Constructive Emancipation and Abandonment raised at that time." However, no order or transcript dated May 5, 2016 is included in the record. The June 28, 2016 transcript documents that it was CLC's first appearance in the support proceeding, the CLC attorney requested that CLC be assigned to represent Ja-Quel in that proceeding, and the Support Magistrate granted CLC's request without limitation. When the CLC attorney submitted subpoenas relating solely to the amount of the subsidy and not to the mother's defense, no one objected, and the Support Magistrate signed them. When the CLC attorney argued on the record that the adoption subsidy should be considered in determining child support, no one objected that CLC lacked standing to make that argument, and the Support Magistrate entertained it. As discussed further below, the February 14, 2017 order issued by New York County Family Court appointing CLC to continue to represent the child in the transferred proceeding was also made without limitation.

Footnote 3:Ms. M does not argue on appeal that this was a valid reason for terminating the adoption subsidy and for relieving her of any obligation for child support. If she had argued this, we would reject it, as any payor of child support could make this claim, and it is not a valid basis for declining to award child support.

Footnote 4:"Basic child support obligation" is defined in the Child Support Standards Act as the amount determined by applying the calculation set forth in the statute (Family Court Act [FCA] § 413[1][c]), before consideration of the statutory factors for determining whether deviation from the basic child support obligation is appropriate (FCA § 413[1][f]).

Footnote 5:The appeal from the order denying objections in this matter brings up for review the Support Magistrate's orders (FCA § 1118; CPLR 5501[a]).

Footnote 6:CLC also has standing to bring this appeal. The final order of a Support Magistrate is appealable after objections have been reviewed by a judge (FCA § 439[e]); see also Reynolds v Reynolds, 92 AD3d 1109, 1110 [3d Dept 2012]). In addition, this Court has discretion to entertain an appeal of any Family Court order other than an order of disposition (FCA § 1112). 

Footnote 7:The April 13, 2016 ACS notice to the mother confirming suspension of the adoption subsidy is a form letter listing various possible reasons for a suspension. The only one checked is "Adoptive parent's request." However, according to a statement added on February 14, 2018 to the U.S. Department of Health and Human Services (HHS) Children's Bureau's Child Welfare Policy Manual, an agency may only suspend subsidy payments if it is unable to establish contact with the parent and therefore cannot establish that the parent is supporting the child and/or remains legally responsible to support the child. It notes that the adoptive parent only ceases to be legally responsible to support the child following termination of parental rights or the child's emancipation, marriage, or enlistment in the military. It further notes that the agency cannot reduce or suspend the assistance "solely because the adoptive parents fail to reply to the agency's request for information, renewal, or recertification of the adoption assistance agreement" (U.S. Department of Health and Human Services, Administration for Children & Families, Children's Bureau, Child Welfare Policy Manual [available at https://www.acf.hhs.gov/cwpm/public_html/programs/cb/ lawspolicies/laws/cwpm/policy_dsp.jsp?citID=12]). Accordingly, it does not appear that ACS's justification for the suspension in 2016 comports with HHS's interpretation of applicable statutes and regulations. 

Footnote 8:Proposed legislation in New York State would permit payment of the adoption subsidy to the child's legal guardian or custodian where the administering agency determines that the adoptive parent is no longer legally responsible to support the child or is no longer supporting the child (2017 NY Senate-Assembly Bill A8313, S6518). Nothing in the proposed legislation would require termination of payments to the adoptive parent and institution of payments to a custodian or guardian so long as the adoptive parent remained legally responsible for the child's support and transferred the subsidy funds to the custodian or guardian.

Footnote 9:The mother also claims that a home study would be part of such review. However, the applicable regulation requires a home study of the adoptive parent's home only as part of the initial application process (18 NYCRR 421.24[c][2][iv][a]).

Footnote 10:The mother also claims that she would have to produce information about whether the child is covered by health insurance or whether other reimbursement for medical expenses is available. However, the regulatory provisions to which she cites apply only to medical subsidies for "handicapped" children that are not federally reimbursable (18 NYCRR 421.24[e][2][v], [ix]). There is no evidence that Ja-Quel is in receipt of this type of medical subsidy. Furthermore, even if the mother were required to produce such information, she does not claim that the guardianship order prohibits her from acquiring healthcare information about her son.

Footnote 11:As the amici point out, adopted children, and, in particular, children adopted from foster care, have been found to be significantly more likely than other children to suffer from physical, mental and behavioral issues requiring special services, as appears to be the case for Ja-Quel (see Karin Malm et al., Office of the Asst. Secretary for Planning and Evaluation, U.S. Dept. of Health and Human Svcs., Children Adopted from Foster Care: Child and Family Characteristics, Adoption Motivation, and Well-Being, available at https://aspe.hhs.gov/basic-report/children-adopted-foster-care-child-and-family-characteristics-adoption-motivation-and-well-being [May 30, 2001, p 15]; Matthew D. Bramlett et al., "The Health and Well-Being of Adopted Children," Pediatrics vol. 119/issue supplement 1 [2007]).

Footnote 12:The mother claims, for the first time on appeal, and without citing to any legal authority, that she would be "liable" if Ja-Quel's guardian failed to use the subsidy for his support. Even if this argument were properly before us, we would reject it. This might be a basis for future suspension of the subsidy, or even termination of the guardianship. Since the child support order will provide that child support is to be paid in the amount of the subsidy only for so long as the mother is eligible to receive it, her concern is unfounded.