(120 P.3d 376)
No. 93,946

RAIGAN REED SPARKS, by and through her next friend RYAN WILLIAMS, and RYAN WILLIAMS *Appellees,* v. RACHEL ANN SPARKS, *Appellant.*

Opinion filed September 30, 2005.

*Jennifer Passiglia,* of Taylor, Krusor & Passiglia, L.L.P., of Winfield, for appellant.

*Lucy L. Herlocker,* of Herlocker, Roberts & Herlocker, L.L.C., of Winfield, for appellee.

Before PIERRON, P.J., CAPLINGER, J., and BUKATY, S.J.

CAPLINGER, J.: Rachel Sparks and Ryan Williams are the mother and father of the minor child, Raigan Reed Sparks. Rachel Sparks appeals from the district court's grant of shared residential custody, arguing the district court erred in the method it used to determine custody. We affirm, finding the district court's methodology was correct; specifically, we hold the district court did not err in finding the time spent by the minor child in the father's home, being cared for by her paternal grandmother, should be credited to the father in determining whether the parties have shared residential custody.

*Background*

Rachel Sparks gave birth to Raigan Reed Sparks on January 27, 2004. Ten days later, Ryan Williams filed a petition to establish paternity of the child. Williams also requested that child support and a parenting plan be established if he was determined to be the father.

Sparks' answer acknowledged Williams was the biological father of the child. Sparks requested joint custody, with a provision that the child's primary residence be with her and that Williams have reasonable periods of parenting time. She also requested child support and contribution for medical expenses for the prenatal care and birth of the child.

On May 12, 2004, Williams filed a motion to establish joint custody and specific parenting time. He requested the court award joint custody, allowing Sparks to have the child's primary residence and granting him specific parenting time. He also requested the birth certificate be amended to name him as the father and to have the child's last name changed to Williams.

On June 9, 2004, the district court issued a temporary order establishing parenting time and child support. The order provided for joint custody with the child's primary physical residence with Sparks. Williams was granted parenting time on the days he was not working and Sparks was working. On those days, he would pick the child up at 1:00 p.m. and return her to Sparks the following morning. The court also ordered support in the amount of $450 per month.

Williams filed a motion to modify the temporary order and to set the matter for a final hearing. The hearing was held on October 20, 2004. Prior to the hearing, the parties stipulated to the facts relating to the schedule of parenting time. Specifically, Williams took the child on days that he was not working, except for Wednesday and Thursday, which were Sparks' scheduled days off. Sparks dropped the child off at Williams' residence at approximately 1:00 p.m., before she went to work each day that she worked. She picked the child up sometime after her shift ended or in the morning. Williams' mother watched the child if Williams needed to sleep between shifts or had to go to work during the time the child was scheduled to be with him.

The parties further stipulated that Williams had the child in his home 46% of the time in the month of June, 51% in July, and 55% in August. The parties noted the time had not been calculated for September or October, but the percentage of time the child spent with each parent would be roughly equivalent to the preceding months. However, if the times when Williams' mother watched the child while he was at work or sleeping did not count toward his residential time, the percentages of time the child spent with Williams were: 42% in June, 38% in July, and 45% in August.

Although the specific nature of Spark's argument in the trial court is unclear from the record, it is apparent from the dialogue between the trial court and the parties that Sparks contended the time Williams' mother watched the child should not count as parenting time for Williams. However, the district court found the time the child spent at Williams' home, being cared for by Williams' mother, should not be excluded in determining whether the parties had shared residential custody.

The district court concluded that based upon the stipulation of facts, the parties had residential custody of the child on an equal or nearly equal basis. The court thus granted joint custody of the minor child, with the provision that the parties exercise parenting time under a shared custodial arrangement consistent with the existing schedule and pattern of allocation of parenting time. Further, the court reduced Williams' child support to $67 per month.

On appeal, Sparks argues that in finding shared residential custody, the district court improperly considered the time in which Williams was not personally caring for the child while she was at his residence. She also argues the district court failed to consider whether the parties shared expenses equally.

The parties in this case stipulated to the relevant facts and agreed to the time the child was at each parent's residence. Their dispute centers on the characterization of that time. Because the dispute revolves around the legal characterization of stipulated facts, our standard of review is de novo. See *In re Harris Testamentary Trust*, 275 Kan. 946, 951, 69 P.3d 1109 (2003). Further, interpretation and application of the Kansas Child Support Guidelines is a question of law subject to unlimited review. *In re Marriage of Paul*, 32 Kan. App. 2d 1023, 1024, 93 P.3d 734 (2004), *aff'd* 278 Kan. 808, 103 P.3d 976 (2005).

*Shared residential custody*

The shared residential custody provision of the child support guidelines sets forth two prerequisites to awarding shared residential custody: (1) the child's residency must be split equally or nearly equally between the parents; and (2) the parties must share the child's direct expense on an equal or nearly equal basis. Supreme Court Administrative Order No. 180, III.B.7. (2004 Kan. Ct. R. Annot. 105).

Although Williams lived in the same home as his mother, his mother was not paid to watch the child, and Williams was responsible for the child's expenses while she was in his home, Sparks urges us to interpret the term "residency" to include only the time when the child is personally supervised by a parent who is awake.

Under Sparks' interpretation, a court determining residential custody would be required to exclude any time a parent slept while the child was at the parent's residence. Or, if a parent were to remarry, the court would be required to exclude any time the natural parent left the home or slept, leaving the child in the care of a stepparent. Similarly, a court could not consider the time during which a child was left in the care of an older sibling, while a parent slept or ran errands.

Spark's interpretation of the meaning of "residency" under the shared residency provision is both illogical and unenforceable. We thus conclude the district court did not err in finding that time spent by the minor child in the father's home, being cared for by her paternal grandmother, should be credited to the father in determining whether the parties have shared residential custody.

*Sharing of direct expenses*

Sparks also argues the district court failed to consider whether the parties shared the child's direct expenses equally or nearly equally. Sparks does not suggest that expenses were not shared equally, only that the court did not make a specific finding to that effect.

The child support guidelines provision for shared residency situations directs:

"No shared residency treatment shall be ordered without the court having approved a plan for paying and sharing expenses. The court shall require that a detailed expense sharing payment plan be submitted by the party or parties requesting the shared residency treatment." Administrative Order No. 180, III.B.7. (2004 Kan. Ct. R. Annot. 105).

In this case, the court heard evidence that the parties were separately bearing any direct expenses for the child in each party's home, that Williams was paying for any daycare expenses needed, and that medical expenses were shared. Further, the court stated "the plan the court would approve would be" that each party would be responsible for the child's direct expenses while the child was at that party's home. In the journal entry, the court set forth the manner in which the known expenses would be divided. It ordered the parties to share expenses accordingly and ordered Williams to pay child support. It further ordered the parties to submit a plan for paying and sharing expenses.

We find that the court approved a general plan for the sharing of direct expenses in ordering shared residential custody. Further, the court properly required the parties to submit a more detailed expense sharing plan for the court's approval.

Under these circumstances, we conclude the district court did not abuse its discretion by approving a shared residential custody

arrangement. Sufficient evidence exists to support the court's determination that the child resided with each parent equally and that direct expenses were shared equally.

*Best interests of the child*

Finally, Sparks argues the district court erred by failing to consider the best interests of the child before determining what form of custody should be assigned, as required under K.S.A. 2004 Supp. 60-1610.

When resolving custody issues between the parents, the paramount consideration is the welfare and best interests of the child. The trial court is in the best position to make findings on the best interests of the child, and its judgment will not be disturbed in the absence of an abuse of judicial discretion. *In re Marriage of Rayman*, 273 Kan. 996, 999, 47 P.3d 413 (2002). "Judicial discretion is abused only when no reasonable person would take the view adopted by the trial court. [Citations omitted.]" *Varney Business Services, Inc. v. Pottroff*, 275 Kan. 20, 44, 59 P.3d 1003 (2002).

K.S.A. 2004 Supp. 60-1610(a)(3)(B) provides a nonexclusive list of factors to be considered by the court in determining custody in accordance with the best interests of the child. Sparks argues the district court did not consider these factors before determining custody in this case. However, she fails to note the preceding language in K.S.A. 2004 Supp. 60-1610(a)(3)(A), which states:

"If the parties have entered into a parenting plan, it shall be presumed that the agreement is in the best interests of the child. This presumption may be overcome and the court may make a different order if the court makes specific findings of fact stating why the agreed parenting plan is not in the best interests of the child."

Sparks and Williams had entered into a parenting plan agreement. Pursuant to K.S.A. 2004 Supp. 60-1610(a)(3)(A), it was presumed that this agreement was in the best interests of the child. Therefore, the district court was not required to specifically consider the factors enumerated in K.S.A. 2004 Supp. 60-1610(a)(3)(B).

We thus affirm the district court's order granting joint custody of the minor child and shared residential custody.

Affirmed.