NOT DESIGNATED FOR PUBLICATION

No. 113,192

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

MICHAEL S. CARLSON,
*Appellant*,

and

MINDI M. CARLSON,
*Appellee*.

MEMORANDUM OPINION

Appeal from Ottawa District Court; JEROME P. HELLMER, judge. Opinion filed January 15, 2016. Affirmed in part, reversed in part, and case remanded with directions.

*Autumn L. Fox*, of The Law Office of Autumn L. Fox, P.A., of Abilene, for appellant.

*Robert S. Jones*, of Norton, Wasserman, Jones & Kelly, L.L.C., of Salina, for appellee.

Before ATCHESON, P.J., BUSER and GARDNER, JJ.

BUSER, J.: In this divorce case, the trial court entered custody, residency, parenting time, and support orders for the benefit of the parties' minor child, G.C. The child's father, Michael S. Carlson, appeals the residency and support orders. The child's mother, Mindi M. Carlson, also challenges the support order, although she did not file a cross-appeal.

Since the parties do not appeal the legal custody or parenting time orders, they are affirmed. Although we believe the controversy regarding the residential custody orders is

largely a matter of "nomenclature," as the trial court put it, we reverse the district court's order that Mindi have primary residential custody because it was based on an error of law. With respect to support, we cannot resolve the arguments of the parties on the present record. We therefore reverse the child support orders and remand both the residency and child support matters to the district court for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

Michael and Mindi were married on April 29, 2006, and have one minor child, G.C., born in 2004. On February 11, 2014, after about 8 years of marriage, Michael filed a petition for divorce based on incompatibility. Along with his divorce petition, Michael filed a motion for ex parte temporary orders which, for purposes of this appeal, requested joint legal custody and primary residential custody of G.C. Later that day, the district court issued an ex parte temporary order, granting the parties joint legal custody of G.C. Also as requested, Michael was designated as G.C.'s primary residential custodian.

Almost 2 weeks later, on February 24, 2014, Mindi filed a motion seeking a modification of the district court's temporary custody order, along with a proposed temporary parenting plan. In relevant part, Mindi requested joint legal and primary residential custody of G.C.

On March 13, 2014, the district court held a hearing on Mindi's motion to modify the temporary orders. After hearing testimony, the district court granted the parties joint legal custody of G.C., and in an attempt to limit disruptions to G.C.'s daily routine, the court did not designate a primary custodial parent. Instead, the district court ordered the parties to "continue to attempt to work out a parenting schedule that [was] mutually acceptable to both parties and in [G.C.]'s best interest." As the district judge noted,

2

"frankly, I think that we can come to an agreement today, temporarily, that will do exactly what you said, [Michael], and that is to have [G.C.]'s schedule stay as much the same as it can for each of you to have as much time as you possibly can with him. . . .

"The reason I'm not designating a primary parent is because I don't think there is one. I mean, I think you guys have both parented jointly throughout all of this and I think you are going to continue to."

Additionally, because G.C. would be spending most of his overnights with Mindi, the district court ordered Michael to pay child support of $736 per month.

On May 13, 2014, the district court granted the divorce but reserved all remaining issues for a future hearing. Prior to trial, a guardian ad litem (GAL) was appointed and filed a pretrial brief which recommended that the parties share joint legal custody and residential custody of G.C. According to the GAL, G.C., a very mature and outgoing 10-year-old, was "emphatic that he want[ed] to see both of his parents equally every week," and while his current schedule was "'okay,'" he would "really rather have equal time." The GAL opined that it was important to keep G.C.'s routine as static as possible, and the majority of the people she interviewed, including G.C., stated their belief that a shared residential custody schedule was optimal, as it would allow the child to see both of his parents on a regular and equal basis.

The case proceeded to trial on September 5, 2014. With regard to G.C., the parties agreed they should share joint legal custody. Mindy and Michael disagreed, however, as to residential custody and child support. Similar to the GAL, Michael contended that shared residential custody, wherein each parent would receive parenting time consisting of two overnights during the week and alternating weekends, was the best arrangement for G.C. As for child support, Michael proposed that pursuant to an arrangement of shared custody and direct expenses, he should pay Mindi $112 per month beginning September 1, 2014. Of note, Michael acknowledged that Mindi paid $170 per month for G.C.'s health insurance.

3

Mindi, on the other hand, requested the designation of primary residential custodian. While Mindi indicated that she did not object to continuing the parenting time schedule which provided Michael one overnight stay during the week and alternating weekends with G.C., she strongly disagreed with the GAL's suggestion that Michael receive two overnight stays per week. With regard to child support, Mindi contended that Michael should pay her $742 per month. She also asserted that she paid $205 per month for G.C.'s health and dental insurance.

At the conclusion of trial, the district court found that it was in G.C.'s best interests to award the parties joint legal and shared residential custody. With respect to parenting time, the district court determined that Michael would have custody of G.C. one overnight during the week and every other weekend from Friday at 6 p.m. to Monday morning. According to the district court:

> "The Court believes, given the totality of the circumstances and the testimony we have today that the best interest of [G.C. is] served as the [GAL] has recommended that the two of you being designated as shared parents, not to diminish either one of your values or not to elevate one of your value above the other, but to recognize that you have done a remarkable job of raising a wonderful child . . . ."

With regards to child support, the district court opted to defer its decision on this issue for a later date. The district judge did, however, indicate that child support would be determined pursuant to a shared custody arrangement, and he ordered the parties to each submit a child support worksheet to the court based upon such an arrangement. Subsequently, Michael filed his amended proposed findings of facts and conclusions of law which reiterated his belief that child support should be set at $112 per month.

In response, Mindi claimed that based upon a child support calculation figured pursuant to a shared custody arrangement, Michael owed her $570 per month in child support. In part, Mindi argued that because G.C. spends 60% of his time with her and

4

40% with Michael (as evidenced by a schedule that had apparently been submitted to the GAL), it was appropriate to include a parenting time adjustment in the child support calculation, which increased Michael's support obligation by $200 per month.

Michael objected to Mindi's proposed child support worksheet. In particular, Michael argued that Mindi's parenting time adjustment was inappropriate because the Kansas Child Support Guidelines (2015 Kan. Ct. R. Annot. 111) (Guidelines) do not allow district courts to use parenting time percentages in shared residential custody cases.

The district court filed a journal entry regarding the trial which outlined the division of the marital estate. The journal entry also provided:

"The Court thereupon announces its decision regarding child custody and parenting time. A Journal Entry reflecting that decision dated September 5, 2014 has been previously filed of record herein. The Court thereafter announces, however, that it is taking all other issues under advisement. The matter is then adjourned.

"THEREAFTER, the Court requests counsel supply to the [GAL], certain information regarding their position on the amount of time [G.C.] spends with each parent. The [GAL] shall then provide such information to the Court. After receiving that information, the Court thereupon takes the matter under advisement and on October 16, 2014, the Court holds a telephone conference call with counsel for the parties for the purpose of announcing its decision. . . . The Court's decision regarding child support is continued by the Court for it to receive additional information, it being the Court's intention to submit its decision regarding the child support issue in writing thereafter."

The record on appeal does not contain a transcript of the telephone conference call which apparently occurred on October 16, 2014.

Subsequently, on October 28, 2014, the district court issued a letter decision, reflecting its decision on child support. The district court explained that with the exception of the application of a joint custody calculation versus a shared custody

5

application, there was "no difference" in the parties' proposed child support worksheets. The district court found that in consideration of the parties' financial obligations, it was necessary to alter his previous custody determination to "reflect the reality that [G.C.] primarily resides with [Mindi] and [Michael] [h]as significant parenting time":

> "The court finds that the appropriate child support obligation should be calculated on the Joint Custody formula with the appropriate application of time spent with [Michael] which calculates to about 40% of the time, and in addition to same [*sic*] an overall financial consideration, which the court finds to be in the best interest of [G.C.] given the activities provided by [Michael] and the overall circumstances of [G.C.] being with [Michael] in the sum of $200.00 [a] month."

Consequently, the district court adopted "the suggested child support worksheet as filed by [Mindi]" based upon a joint custody arrangement, no equal time adjustment, and "an overall financial deviation given to [Michael] in the sum of $200.00 per month."

At the district judge's direction, Mindi's counsel subsequently attempted to journalize the findings and orders set forth in his letter decision, but the parties were unable to agree on the final journal entry. On November 17, 2014, the district court held a telephone conference to resolve the matter.

During the conference, Michael objected to Mindi's proposed journal entry because it designated her as G.C.'s primary residential parent. Mindi's attorney justified the language because he believed the district court's letter decision altered the label for the parties' custody arrangement based upon a finding that the parties were not actually enjoying equal or nearly equal parenting time. Mindi's attorney maintained this change was merely a matter of semantics, *i.e.*, the change did not actually affect the previous residential custody order because the parties' parenting time was to remain unchanged: "You know, a rose by another name smells as sweet, the [parenting] time is still the

6

same . . . ." Michael's attorney argued that it was inappropriate to change the residential custody arrangement when addressing child support.

In response, the district court explained that it did not alter the custody order in any meaningful respect; it merely changed the nomenclature used to describe the previous ruling regarding the parties' parenting time in order to accurately assess the amount of child support to which Mindi was entitled. The district judge stated:

> "The problem that the Court encountered in this case, . . . that [Mindi] and [Michael] . . . had a viable and workable relationship for [G.C.] that was styled and characterized as a 'shared custody arrangement.'
>
> . . . .
>
> "Hence the Court reached the determination, . . . that I want the parents to continue to cooperate and to pursue this course of conduct on behalf of [G.C.] and it becomes a matter of nomenclature terminology.
>
> "[Michael], it appears now is very much attached to the word shared, [Mindi] does not seem to care a lot about the terminology shared and the reality is the Court entered a joint custody order simply as a reflection of the need to adjust the ability of these parents to provide for the financial needs of [G.C.] and also to provide for the shared time of [G.C.] as we had previously observed them doing.
>
> "It does appear now, at this point in time, that we may have simply created an impasse between the parents, we may have destroyed the ability of these parties to operate in a shared custody arrangement and/or even joint custody arrangement . . . ."

The district judge indicated that he would abandon his nomenclature change if Michael wanted to "simply agree that he [would] pay that amount of child support and find a way to support it in a child support guideline journal entry." In response, Mindi's counsel indicated that he was "more than willing to live with [a] $566.00 [child support] figure" if such an amount was acceptable to Michael. Michael's counsel replied by reiterating that because the parenting time split equated, in actuality, to 48% and 52%, rather than 40% and 60%, it was inappropriate to reverse the previous shared residential

custody order, and "if the Court's greatest concern is . . . does Mindi have enough money to support [G.C.], we can address that."

The district judge ultimately opted for the following course of action:

"Counsel, we have two options, you have one week to figure out how you want the language of that journal entry to reflect the $566.00 or you are going to have a joint custody order as stands and you can appeal it and let some other judge decide whether that's the correct analysis or not[.]

. . . .

". . . The language is going to stay as it is in my letter until you guys can come up with an opportunity to formulate language that fits your needs. My goal is to provide a financial network in which the shared custody arrangement by any other name can work.

"So if your client understands and he agrees to pay the $566.00 and learned counsel can get together with the author of this or the author of anything they want to get to together with and determine the language that will reflect the payment being made on a shared custody arrangement the Court will sign that Order, if not, my Order is going to stand you can appeal the entire case and they can destroy what little benefits they have received.

. . . .

". . . I'm going to task [the GAL] with drafting this journal entry with you folks providing suggested language to her relative to how we end up with the $566.00 figure; I'm very comfortable with having these parties continue with the shared arrangement as long as we have this network of financial stability to do it, I'm not interested to them individually paying bills or sharing the payment of bills so I want one payment made, they each take of their own, [G.C.] moves back and forth between their homes and grandparents and hopefully [G.C.] continues to grow.

. . . .

". . . We are not changing the time [G.C.] spends in either household that was formulated based upon what the testimony of the record is, we are only making sure that there is a financial figure per month that makes sure that both [Mindi] can stay in the home and [Michael] can get his new home away from his parents and that [G.C.] can continue to move back and forth between these two homes and how you make those

8

adjustments on the worksheet, unless you try to use some kind of a shared payment plan, the Court's going to work with it.

. . . .

". . . If you don't agree and I don't have a journal entry by next Monday it will be a joint custody order, parenting time will be outlined as it has been on the record right now and the child support order will be established and you folks can appeal me."

On December 22, 2014, the district court issued its final order regarding custody and child support, which, according to the journal entry, was entered after "issu[ing] orders to the GAL in the absence of a formal hearing, and in the absence of counsel being present." The district judge determined that his previous order as to parenting time remained in effect and the parties were granted joint legal custody of G.C. The district court designated Mindi as the primary residential parent because G.C. was with Mindi 60% of the time and with Michael 40% of the time. The district judge explained, "Percentages of time were requested from the Court through the GAL and submitted by the GAL to the Court after speaking with counsel. Percentages of time are not, however, in the record." The district court further determined that Michael should pay Mindi $566 per month in child support, effective October 1, 2014, and he attached a child support worksheet to his order, which listed Mindi's gross annual income as $45,000 and Michael's income as $67,731, credited Mindi $205 for G.C.'s health and dental insurance premium, and provided Michael with an overall financial condition adjustment of $354.

Michael filed a timely appeal.

RESIDENTIAL CUSTODY ORDER

On appeal, Michael contends the district court abused its discretion when it designated Mindi as G.C.'s primary custodial parent because this decision was based upon an error of law, *i.e.*, the court improperly considered child support as a factor in

9

determining residential custody, and an error of fact, *i.e.*, substantial competent evidence does not support the parenting time percentages used to justify this decision.

Various provisions of the Revised Kansas Family Law Code, *i.e.*, K.S.A. 2014 Supp. 23-3201 *et seq.* guide a district court's discretionary determination of a child's custody, residency, visitation, or parenting time. The paramount consideration in making such decisions is the child's welfare and best interests. To assist district courts, K.S.A. 2014 Supp. 23-3203 provides a nonexclusive list of 18 factors that, if relevant, the district court must consider. The parties agree we review residency orders for abuse of discretion. See *Harrison v. Tauheed*, 292 Kan. 663, 672, 256 P.3d 851 (2011). A trial court abuses its discretion if its orders are (1) arbitrary, fanciful, or unreasonable, *i.e.*, no reasonable person would have taken the view adopted by the court, (2) guided by an erroneous legal conclusion, or (3) based upon an error of fact. *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). Challenges to specific factual findings in support of such determinations are reviewed to assure that they are supported by substantial competent evidence and that they support the court's legal conclusions. See *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 704, 229 P.3d 1187 (2010).

In the present case, legal custody is not at issue because the district court awarded the parties joint legal custody of G.C., a legal custodial arrangement wherein both parties have "equal rights to make decisions in the best interests of the child." K.S.A. 2014 Supp. 23-3206(a). Neither party is disputing the propriety of this order. Instead, the parties' dispute relates solely to G.C.'s residency.

As explained above, the district court initially made an affirmative finding that "shared residential custody" was in G.C.'s best interests. After considering the "financial obligation[s] of the parties," however, the district court determined it was appropriate to designate Mindi as G.C.'s primary residential custodian "to reflect the reality that [G.C.] primarily resides with [her] and [Michael] [h]as significant parenting time."

10

Michael contends this decision was erroneous because "the child support tail wagged the custody dog." Michael's contention has merit. Based upon our review of the record, the district court premised its decision to designate Mindi as G.C.'s primary residential custodian in order to provide her with an appropriate amount of child support. This designation was based upon a mistaken belief that this residency determination controlled the applicability of the shared custody provisions set forth in the Guidelines.

But the Guidelines govern child support while the Revised Kansas Family Law Code (RKFLC) governs child custody determinations, and the term "custody" carries a different meaning when the district court is setting child support under the Guidelines and establishing residency under the RKFLC. See *In re Marriage of Karst*, 29 Kan. App. 2d 1000, 1002, 34 P.3d 1131 (2001), *rev. denied* 273 Kan. 1035 (2002); *In re Marriage of Roth*, 26 Kan. App. 2d 365, 368, 987 P.2d 1134 (1999); 2 Elrod, Kansas Law and Practice, Kansas Family Law § 14:15 (2015).

Under K.S.A. 2014 Supp. 23-3207(a), "[t]he court may order a residential arrangement in which the child resides with one or both parents on a basis consistent with the best interests of the child." As explained by a panel of this court in *In re K.B.*, No. 110,175, 2014 WL 1193440, at *4 (Kan. App. 2014) (unpublished opinion):

> "Shared residency is not a statutory phrase but does appear in the Kansas Child Support Guidelines § IIIB.6 (2013 Kan. Ct. R. Annot. 129), and in caselaw. See, *e.g.*, *In re Marriage of Atchison*, 38 Kan. App. 2d 1081, 1086, 176 P.3d 965 (2008); *Sparks v. Sparks*, 34 Kan. App. 2d 499, 502-03, 120 P.3d 376 (2005)."

The Guidelines, on the other hand, provide that district courts have discretion to utilize the shared custody provisions, *i.e.*, the shared expense formula or the equal parenting time formula, in setting child support for parents who "share the[ir] children's time equally or nearly equally." Administrative Order No. 261, Kansas Child Support

Guidelines, § III.B.7 (2015 Kan. Ct. R. Annot. 117); see also *In re Marriage of Skoczek*, 51 Kan. App. 2d 606, 608, 351 P.3d 1287 (2015). It appears the controversy over child support in this case revolved around whether it was appropriate to apply the equal parenting time formula. As provided in the Guidelines:

"To use the equal parenting time formula, the district court must first make an affirmative finding that a shared residential custody arrangement is in the best interests of the minor child, that the parents share the child's time equally or nearly equal, and one or more of the following conditions apply:

"• The parties do not agree to use the shared expense plan;

"• applying the shared expense formula would place the parent designated to pay the direct expenses without the sufficient funds to be responsible for the direct expenses; or

"• applying the shared expense formula is not in the best interests of the minor child. Guidelines § III.B.7.b." *In re Marriage of Skoczek*, 51 Kan. App. 2d at 608-09.

Accordingly, a district court's residential custody determination does not control whether the shared custody provisions of the Guidelines apply. See *In re Marriage of Karst*, 29 Kan. App. 2d at 1002; *In re Marriage of Roth*, 26 Kan. App. 2d at 368; 2 Elrod, Kansas Law and Practice, Kansas Family Law § 14:15. Indeed, "[t]he mere fact that parents 'share' physical and legal custody does not mean that they have 'nearly equal' time as contemplated for a reduction in the [G]uidelines." 2 Elrod, Kansas Law and Practice, Kansas Family Law § 14:15, p. 713.

In *In re Marriage of Karst*, 29 Kan. App. 2d at 1001-03, our court upheld a district court's refusal to apply the shared custody provisions in the Guidelines even though the father spent substantial time with his children, shared some child-related expenses, and the parties' mediation report stated that they had agreed to "'share the physical and legal custody of their children.'" In particular, the district court reviewed the parties' controverted evidence with respect to the amount of time father spent with the children

and his contribution to their expenses and concluded that no shared custody arrangement, as that term was used in the Guidelines, existed. Our court explained:

> "The [Guidelines] govern[ ] the setting of child support, while 60-1610(a)(4) [now codified at K.S.A. 2014 Supp. 23-3206] governs the determination of child custody status. [Citation omitted.] The district court was correct in using the shared custody provisions in the [Guidelines] for setting child support rather than focusing on the purported custody determination. It is possible to apply the shared custody provisions of the [Guidelines] without contravening 60-1610(a)(4) [Citation omitted.]" 29 Kan. App. 2d at 1002.

See also K.S.A. 2014 Supp. 23-3207(a) (residency).

In conclusion, the district court erred when it changed its residential custody determination because an erroneous legal conclusion guided its decision, *i.e.*, its belief that the parties' residential custody status governed the setting of child support.

We perceive no practical effect on the residency orders from the district court's use of the term "primary residential parent." The district court did not change the parties' parenting plan, and, thus, its decision to designate Mindi as the primary residential custodian has no practical impact on the parties. Mindi and Michael still enjoy the same amount of time with G.C. that they enjoyed when the residential custody arrangement was deemed "shared." Still, because the district court's ruling finding that Mindi should be designated the "primary residential parent" was an error of law, we are persuaded that the ruling should be reversed and the matter remanded.

Upon remand, the district court shall file a journal entry nunc pro tunc modifying the December 22, 2014, journal entry filed by Judge Hellmer. The journal entry nunc pro tunc shall provide that the prior designation of Mindi as primary residential parent is

13

deleted and that, pursuant to K.S.A. 2014 Supp. 23-3207(a) relating to residential arrangements, Mindi and Michael shall have shared residential custody.

CHILD SUPPORT ORDER

For his second issue, Michael contends "[t]he trial court's child support order is not based on an application of the . . . Guidelines." We have already noted that Mindi challenges the support order as well. Our review is for abuse of discretion, although the interpretation or application of the Guidelines is a question of law subject to unlimited review. *In re Marriage of Thomas*, 49 Kan. App. 2d 952, 954, 318 P.3d 672 (2014).

In essence, Michael and Mindi both contend the district court entered an erroneous child support order because it failed to justify, with adequate written findings of fact in the journal entry, its decision to order Michael to pay Mindi $566 per month in child support. In particular, Michael insists there is "no factual basis" for the district court's order because there was no agreement among the parties regarding income and health insurance costs, and he suggests the district court ignored the Guidelines in order to force him to pay an amount "suggested by one of the parties." Mindi also urges this court to reverse the district court's order but for a different reason, *i.e.*, Mindi insists the child support order is erroneous because the district court neglected to justify its decision to increase Michael's overall financial condition adjustment from $200 to $354.

We have carefully considered the arguments of the parties and the record provided to us. Upon our review, we are unable to trace a path justifying the district court's final order of $566 per month. We recognize child support calculations "are not computations that must be made with scientific accuracy down to the penny." *In re Marriage of Skoczek*, 51 Kan. App. 2d 606, Syl. ¶ 4. And yet, "[u]se of the [G]uidelines is mandatory and failure to follow the guidelines is reversible error." *In re Marriage of Thurmond*, 265 Kan. 715, 716, 962 P.2d 1064 (1998).

14

Our decision is that child support should be recalculated, of necessity, under the newly amended Guidelines. See Supreme Court Administrative Order No. 284 (October 8, 2015), http://www.kscourts.org/rules-procedures-forms/child-support-guidelines/2016-guidelines.asp. All relevant considerations are subject again to proof and argument, excepting items agreed upon or submitted by the parties on a prior record. Our decision represents a lack of confidence in the adherence of the present support order to either the underlying facts or the Guidelines.

Affirmed in part, reversed in part, and case remanded with directions.